

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-29-2000

# United States v. Mack

Precedential or Non-Precedential:

Docket 99-1265

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"United States v. Mack" (2000). *2000 Decisions.* Paper 209.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/209

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 29, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-1265

UNITED STATES OF AMERICA,

v.

CHARLES MACK,

      Appellant.

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Criminal No. 98-308-1)
District Judge: Honorable Marvin Katz

Argued: March 9, 2000

Before BECKER, Chief Judge, NYGAARD and
GARWOOD,[1] Circuit Judges.

(Filed September 29, 2000)

_____

1. Honorable Will L. Garwood, Circuit Judge for United States Court of
Appeals for the Fifth Circuit, sitting by designation.

David L. McColgin, Esq., (ARGUED)
Assistant Federal Defender,
 Supervising Appellate Attorney
Maureen Kearney Rowley, Esq.,
Chief Federal Defender
Federal Court Division,
 Defender Association of
 Philadelphia
Lafayette Building, Suite 800
437 Chestnut Street
Philadelphia, PA 19106
 Counsel for Appellant

Michael R. Stiles, Esq.,
United States Attorney
Walter S. Batty, Jr., Esq.,
Assistant United States Attorney,
 Chief of Appeals
Patrick C. Askin, Esq., (ARGUED)
Special Assistant United States
 Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
 Counsel for Appellee

OPINION OF THE COURT

GARWOOD, Circuit Judge:

After a jury trial, defendant-appellant Charles Mack (Mack) was convicted on one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. S 922(g)(1). Following Mack's conviction, the district court sentenced Mack pursuant to the enhanced penalties under the Armed Career Criminal Act of 1984 (ACCA), 18 U.S.C. S 924(e)(1). Mack now appeals, challenging the application of the ACCA to his sentence. We affirm.

Facts and Proceedings Below

At approximately 8:35 a.m. on March 15, 1997, Philadelphia Police Officers responded to a report of gunfire outside an "after-hours" bar located at Frazier and Market

2

Streets in Philadelphia. Upon arriving at the scene, one of the officers observed Mack bent down and crouched behind a parked vehicle. As he approached Mack, the officer noticed a handgun in Mack's right hand. The officer then drew his sidearm and ordered Mack to put the handgun down. In response, Mack threw the handgun under the parked vehicle. One officer then handcuffed Mack and placed him in custody, while another retrieved the tossed weapon, a loaded .380 caliber semi-automatic handgun, from underneath the parked vehicle.

Shortly thereafter, the officers encountered Gregory Wessels (Wessels) outside the bar. Wessels indicated to the officers that he had been shot in his right leg. When asked to identify the individual who had shot him, Wessels stated that it was Mack. Wessels was then transported to a local hospital where doctors removed a .380 caliber bullet from his right leg. Later that day, while in the hospital, Wessels again identified Mack as the shooter.2

From the area outside the bar, the officers recovered twelve spent .380 caliber shell casings. These shell casings were found just a few feet away from where Mack had been standing and were consistent with ejection from a .380 caliber handgun. The officers also recovered several .22 caliber shell casings from the area and found a .22 caliber rifle from inside the bar. Examination and test-firing of Mack's .380 caliber handgun revealed that it was operational and contained gunshot residue in its barrel. After comparing the spent shell casings recovered outside the bar with the .380 caliber handgun in Mack's possession, the officers determined that the casings had been fired by Mack's handgun. The .380 caliber bullet removed from Wessels's leg was also analyzed. While the bullet bore insufficient markings to positively match it to Mack's handgun, the bullet was of the same caliber and did in fact have markings consistent with being fired from Mack's handgun. Moreover, the officers determined that Mack's handgun had been manufactured outside of Pennsylvania and had traveled in interstate commerce.

_____

2. At trial, however, Wessels denied that it was Mack who shot him.

3

On June 30, 1998, a federal grand jury in the Eastern District of Pennsylvania indicted Mack under 18 U.S.C. S 922(g)3 for one count of knowingly possessing in and affecting interstate commerce, on or about March 15, 1997, a firearm, after he had been previously convicted in the Court of Common Pleas, Philadelphia County, Pennsylvania, of an unspecified felony punishable for a term of imprisonment exceeding one year. The government's pretrial detention motion, filed on July 17, 1998, stated that Mack faced a fifteen-year minimum sentence and a maximum sentence of life imprisonment for violating 18 U.S.C. S 922(g). In addition, the motion mentioned six of Mack's prior convictions: two convictions for aggravated assault, one for robbery, one for possession with intent to deliver a controlled substance, and two for violating the Uniform Firearms Act of Pennsylvania. On August 12, 1998, in response to defense counsel's discovery letter, the government provided certified copies of four of Mack's prior felony convictions: (1) robbery and conspiracy on November 7, 1977; (2) aggravated assault, resisting arrest, and obstruction of justice on July 21, 1982; (3) aggravated assault and possession of an instrument of crime on December 11, 1985; and (4) possession with intent to deliver a controlled substance and conspiracy on April 9, 1991. Moreover, on several occasions prior to trial, the government orally notified defense counsel of its intent to seek an enhanced sentence under the ACCA.4

_____

3. 18 U.S.C. S 922(g) provides in relevant part:

"It shall be unlawful for any person--

(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

. . .

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

4. Section 922g(1), which proscribes the offense of which Mack was convicted, contains no penalty provision. Section 922 is entitled "Unlawful acts". Section 924 is entitled "Penalties". Section 924(a)(2)

4

A two-day jury trial concluded on September 25, 1998, with the jury finding Mack guilty of violating 18 U.S.C. S 922(g). On November 30, 1998, the Probation Office submitted its Presentence Investigation Report (PSR) for Mack's sentencing. The PSR stated that Mack was subject to sentencing under the ACCA and indicated that, prior to 1997, Mack had been convicted of seven violent felonies and serious drug offenses in the Philadelphia Court of Common Pleas: (1) robbery and conspiracy on November 7, 1977; (2) carrying a firearm without a license on January 17, 1980; (3) aggravated assault, resisting arrest, and obstruction of justice on July 21, 1982; (4) a violation of the Uniform Firearms Act on March 13, 1985; (5) aggravated assault and possession of an instrument of crime on December 11, 1985; (6) possession of a controlled substance on March 21, 1986; and (7) possession with

_____

provides that "[w]hoever knowingly violates subsection . . . (g) . . . of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both". Section 924(e)(1), the codification of the ACCA, provides in relevant part:

>        "In the case of a person who violates section 922(g) of this title
>        and has three previous convictions by any court referred to in
>        section 922(g)(1) of this title for a violent felony or a serious
> drug
>        offense, or both, committed on occasions different from one
> another,
>        such person shall be fined not more than $25,000 and imprisoned
>        not less than fifteen years, and, notwithstanding any other
> provision
>        of law, the court shall not suspend the sentence of, or grant a
>        probationary sentence to, such person with respect to the
> conviction
>        under section 922(g)."

Section 924(e), which specifies no maximum term of imprisonment, has been construed to authorize a life term. See Custis v. United States, 114 S.Ct. 1732, 1734 (1994) ("The Armed Career Criminal Act of 1984, 18 U.S.C. S 924(e) (ACCA), raises the penalty for possession of a firearm by a felon from a maximum of 10 years . . . to a mandatory minimum sentence of 15 years and a maximum of life in prison. . . if the defendant `has three previous convictions . . . for a violent felony or serious drug offense.' "); United States v. Kole, 164 F.3d 164, 168 (3d Cir. 1998) (quoting the foregoing passage from Custis ); United States v. Guerrero, 5 F.3d 868, 874 n.12 (5th Cir. 1993); United States v. Carey, 898 F.2d 642, 644 (8th Cir. 1990); United States v. Blannon, 836 F.2d 843, 845 (4th Cir.), cert. denied, 108 S.Ct. 1741 (1988).

intent to deliver a controlled substance and conspiracy on April 9, 1991. Because he was considered an armed career criminal, Mack's criminal history category was VI. 5 See U.S.S.G. S 4B1.4(c)(2). The PSR calculated Mack's total offense level to be thirty-four, as Mack possessed the handgun in connection with a crime of violence (the shooting of Wessels). See U.S.S.G. S 4B1.4(b)(3)(A). The imprisonment range for a defendant with a criminal history of VI and a total offense level of thirty-four is 262-327 months. See U.S.S.G. Ch. 5, Part A.

In response to the PSR, Mack filed a pro se motion challenging the application of the ACCA enhancement on the basis that he did not receive formal pretrial notice of the government's intent to seek an enhanced sentence under the ACCA.6 However, Mack did not at any time contest the validity of the convictions reported in the PSR. On March 9, 1998, the government filed a formal notice of its intention to seek the enhanced penalties, listing four prior convictions that the government was relying on to trigger the application of the ACCA. These were the same four prior convictions that were contained in the government's pretrial detention motion, and they correspond to the certified copies of conviction provided to defense counsel on August 12, 1998 in response to defense counsel's discovery letter.

On March 19, 1998, the district court conducted a sentencing hearing, at which the district court considered Mack's objection to the application of the ACCA. After determining that the ACCA itself does not require pretrial notice, the district court concluded that the only remaining question was whether Mack received the requisite notice to satisfy constitutional due process concerns. The district court ruled that the actual, even if not formal, written notice provided to Mack before trial regarding his prior convictions and possible sentence, the government's pretrial discussions with Mack's counsel regarding the

_____

5. Without the application of the ACCA, Mack's criminal history score was nine, which falls within criminal history category IV.

6. Concurrent with these objections, Mack alsofiled a pro se notice of appeal, which was later dismissed by this Court for lack of subject matter jurisdiction.

6

applicability of the ACCA and its intention to seek its enhanced penalties, and the formal notice Mack received in the PSR and the government's formal notice filed ten days before sentencing satisfied the requirements of due process. Therefore, the district court overruled Mack's notice objection. Mack was convicted of violating 18 U.S.C. S 922(g)(1), and a defendant convicted under section 922(g) who has three previous convictions for violent felonies or violent drug offenses is subject to a sentence enhancement under the ACCA and is deemed "an armed career criminal" under U.S.S.G. S 4B1.4(a). The district court found that Mack qualified as an armed career criminal under the ACCA. The district court also concluded that Mack used or possessed the handgun in the commission of a violent felony, the shooting of Wessels. Accordingly, the district court sentenced Mack to 262 months of imprisonment, five years of supervised release, and a special assessment of $100. Mack filed a timely notice of appeal.

Discussion

On appeal, Mack asserts the following points of error: (1) the district court erred in enhancing his sentence under the ACCA in the absence of formal pretrial notice of the government's intention to seek enhancement and of the specific prior convictions supporting its application; (2) the district court's finding that Mack used or possessed a firearm in connection with a crime of violence was erroneous because it was based on a preponderance of evidence standard rather than the required and higher "clear and convincing" evidence standard; and (3) the evidence was insufficient to support the district court's finding that Mack used or possessed a firearm in connection with a crime of violence. We consider these issues in that order.

I. Notice of Intent to Seek a Sentence Under the ACCA

Mack did not challenge the validity of the convictions supporting the application of the ACCA before the district court. On appeal, Mack does not assert that he was provided insufficient time to contest these prior convictions nor claims that the district court's finding that he qualified

7

as an armed career criminal was erroneous. Instead, pointing to the importance of pretrial knowledge of the applicability of the ACCA in deciding whether to plead guilty or to go to trial, he contends that his due process rights were violated by the application of the ACCA, because he did not receive formal, pretrial notice of the government's intent to seek an enhanced sentence under the ACCA and of the particular prior convictions that would underlie the application of the ACCA. Accordingly, Mack concludes that the ACCA cannot be constitutionally applied to him. We disagree.

As Mack concedes, the ACCA does not require formal, pretrial notice. See United States v. Mauldin , 109 F.3d 1159, 1163 (6th Cir. 1997); United States v. Hardy, 52 F.3d 147, 150 (7th Cir. 1995); United States v. Craveiro, 907 F.2d 260, 262 (1st Cir. 1990). Thus, only notice necessary to satisfy constitutional due process requirements need be given. This Court reviews de novo Mack's assertion that his due process rights were violated. See United States v. Joseph, 996 F.2d 36, 39 (3d Cir. 1993).

In Oyler v. Boles, 82 S.Ct. 501 (1962), the Supreme Court stated that "due process does not require advance notice that the trial on the substantive offense will be followed by an habitual criminal proceeding." Id. at 504. "Nevertheless, a defendant must receive reasonable notice and an opportunity to be heard relative to the recidivist charge even if due process does not require that notice be given prior to the trial on the substantive offense." Id. at 504. The ACCA is a sentence enhancement statute and does not create a separate offense.7 See United States v. Hawkins, 811 F.2d 210, 220 (3d Cir. 1987). See also United States v.

_____

7. Mack does not contend otherwise. Neither Jones v. United States, 526 U.S. 227 (1999) nor Apprendi v. New Jersey, 120 S.Ct. 2348 (2000) is to the contrary; neither involved prior conviction enhancement, and the Court noted in Apprendi "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." Id. at 2362–63 (emphasis added). And, Mack has never contended that absent a jury finding beyond a reasonable doubt of his ACCA predicate prior convictions that his statutory maximum sentence could not exceed ten years or was other than life imprisonment.

8

Henry, 933 F.2d 553, 558 (7th Cir. 1991), cert. denied, 112 S.Ct. 1703, (1992); United States v. Afflek , 861 F.2d 97, 99 (5th Cir. 1988), cert. denied, 109 S.Ct. 1325 (1989). In Hawkins, this Court held that the government'sfiling notice of its intent to request an enhanced sentence under the ACCA, which included a list of the accused's prior convictions, satisfied due process. See id. However, we declined to determine to what extent, if any, notice by the government of its intention to seek enhanced penalties under the ACCA is constitutionally required. See id. Every circuit that has addressed the issue has concluded that formal, pretrial notice is not constitutionally mandated. See United States v. O'Neal, 180 F.3d 115, 125 (4th Cir.), cert. denied, 120 S.Ct. 422 (1999); Mauldin, 109 F.3d at 1163; United States v. Bates, 77 F.3d 1101, 1105 (8th Cir. 1996); United States v. Gibson, 64 F.3d 617, 625–26 (11th Cir. 1995); Hardy, 52 F.3d at 150; Craveiro , 907 F.2d at 264–65. We agree and hold that due process does not require the government to provide formal, pretrial notice of its intention to seek a sentence under the ACCA.

Although Mack did not receive formal notice by the government that he could be sentenced as an armed career criminal until ten days before the day of sentencing, he received actual notice well before trial. More than two months before trial, the government filed its pretrial detention motion that listed six of Mack's previous convictions: robbery in 1977, aggravated assault in 1982, a Uniform Firearms Act violation in 1980, aggravated assault in 1982, a Uniform Firearms Act violation in 1985, aggravated assault in 1985, and possession with intent to deliver a controlled substance in 1991. This pretrial motion also stated that Mack was subject to a mandatory minimum term of fifteen years' imprisonment, with the possible maximum penalty life imprisonment. In addition, more than one month before trial, the government provided defense counsel with certified copies of four of the six convictions listed in the pretrial detention motion. Mack and the government agree that prior to trial, the government orally informed Mack that he could be sentenced as an armed career criminal.

We conclude that Mack received constitutionally adequate notice. First, the government provided him with

9

actual notice prior to trial, including certified copies of the relevant prior convictions. Second, three and a half months before sentencing, Mack received the PSR, which stated that Mack was subject to being sentenced under the ACCA's enhancement provisions and specified the prior convictions that qualified him for that enhancement (as well as other convictions on which the ACCA's application might have been based). Third, the government filed an additional notice ten days before sentencing formally notifying Mack that he could be sentenced as an armed career criminal. Therefore, Mack received more than sufficient notice of the possibility of an enhanced sentence under the ACCA. See United States v. Rundle, 318 F.2d 64, 66 (3d Cir. 1963) ("[I]t is well settled that while a defendant `must receive reasonable notice and an opportunity to be heard relative to the recidivist charge' that `due process does not require advance notice that the trial on the substantive offense will be followed by an habitual criminal accusation.' ") (quoting Oyler, 82 S.Ct. at 504); see also Hardy, 52 F.3d at 150 (finding that the following met due process notice requirements: actual, informal notice; receipt of the PSR listing all prior convictions and stating the ACCA's applicability; and an additional formal notice just before sentencing).

In conclusion, Mack had sufficient opportunity to contest the earlier convictions and their applicability to his sentence. He chose not to do so. Moreover, Mack makes no claim of factual surprise of either the government's decision to seek an enhanced sentence under the ACCA or the convictions supporting the application of the ACCA. Formal pretrial notice by the government would certainly do no harm, and, given the importance of pretrial knowledge of the ACCA's applicability to the decision whether to plead guilty or to go to trial, we recommend it as the preferred practice. However, it is not constitutionally mandated for good reason, because "the fact of prior conviction is within the knowledge of the defendant." Oyler, 82 S.Ct. at 504 n.6. The notice given Mack more than satisfied due process requirements.

10

## II. Appropriate Standard for Factfinding at Sentencing

In determining Mack's sentence, the application of the enhancement under U.S.S.G. SS 4B1.4(b)(3)(A) and 4B1.4(c)(2) for Mack's use or possession of thefirearm in connection with a crime of violence--his shooting Wessels-- resulted in an offense level increase from thirty-three to thirty-four and a criminal history category increase from category IV to category VI, with a corresponding guideline imprisonment range increase from a range of 188 to 235 months to a range of 262 to 327 months.[8]  Relying on this Court's holding in United States v. Kikumura, 918 F.2d 1084 (3d Cir. 1990), Mack asserts that the ACCA enhancement was so substantial that it requires the district court to find by clear and convincing evidence that he shot Wessels, instead of only by a preponderance of the evidence, the latter being the test apparently employed by the district court.[9] We disagree.

_____

8. U.S.S.G. S 4B1.4 provides in relevant part as follows:

"Armed Career Criminal

        (a) A defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. S 924(e) is an armed career criminal.

        (b) The offense level for an armed career criminal is the greatest of:

        * * * * * *

        (3)(A) 34, if the defendant used or possessed the firearm or ammunition in connection with a crime of violence . . . or

        (B) 33, otherwise.

        (c) The criminal history for an armed career criminal is the greatest
        of:

        * * * * * *

        (1) the criminal history category from Chapter Four, Part A (Criminal History), . . . ; or

        (2) Category VI, if the defendant used or possessed the firearm or ammunition in connection with a crime of violence. .. ."

9. The district court stated "To apply this section [S 4B1.4], it is enough
that the government prove by a preponderance of the evidence that Mr. Mack possessed or used the gun in connection with a crime of violence,

it is not required to prove that he was convicted of a crime of violence."
This was said, however, in connection with rejecting Mack's argument
"that because he was convicted only of possessing a firearm and not of
any crime of violence these [guideline] subsections do not apply to him."

11

The government normally bears the burden of proving facts relevant to sentencing by a preponderance of the evidence. See United States v. Paulino, 996 F.2d 1541, 1545 (3d Cir. 1993). "This is because after a juryfinds a defendant guilty, the presumption of innocence no longer applies, and the protections that form a corollary to that presumption become less important." United States v. Bertoli, 40 F.3d 1384, 1409 (3d Cir. 1994). In Kikumura, however, this Court held that, under certain circumstances, a higher standard of proof may be required. See Kikumura, 918 F.2d at 1098. Kikumura was convicted of twelve counts of passport and weapons offenses, which resulted in an imprisonment range of 27-33 months under the Sentencing Guidelines. See id. at 1093-94. The district court concluded that Kikumura's actions were significantly more serious than his convictions and the corresponding guideline range indicated. See id. at 1097. The district court, therefore, imposed an upward departure on several bases, including Kikumura's intent to cause multiple deaths and serious injuries, his planned detonation of unusually dangerous explosives, his intent to disrupt governmental functions, and the endangerment of public safety and national security. See id. at 1097-98. The district court upwardly departed from Kikumura's original sentencing range of 27-33 months to a term of 360 months' imprisonment--a 330-month upward departure from the median of the applicable guideline range of 27-33 months. See id. at 1098. When making its findings at sentencing, the district court employed the preponderance of the evidence standard. Although recognizing this standard as "overwhelmingly" predominant, this Court held that under the circumstances of a "twelve-fold, 330-month departure from the median of the applicable guideline range" the clear and convincing standard was required in light of 18 U.S.C. S 3553(b)'s[10]

_____

10. 18 U.S.C. S 3553(b) provides in relevant part:

> "The court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind,

or

> to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. . . ."

directive that the sentencing court "find" certain considerations to justify a departure. Id. at 1101-02; see id. at 1101 ("[When a departure] is sufficiently great that the sentencing hearing can be fairly characterized as`a tail which wags the dog of the substantive offense,' . . . the factfinding underlying that departure must be established at least by clear and convincing evidence.") (quoting McMillan v. Pennsylvania, 106 S.Ct. 2411, 2417 (1986)).

Kikumura's heightened standard has been applied in other circumstances, albeit only to similarly extreme upward departures. See United States v. Pastor , 173 F.3d 206, 216 (3d Cir. 1999) (applying the clear and convincing standard when reviewing a nine-level upward departure that increased the guideline range from 108-135 months to 292-365 months); Bertoli, 40 F.3d at 1409-10 (concluding that an upward departure, resulting in a fifty-fold, $6.875 million increase of a defendant's fine, warranted the clear and convincing standard of proof); United States v. Seale, 20 F.3d 1279, 1288 (3d Cir. 1994) (finding the clear and convincing standard governed a seven-fold, $1.5 million upward departure from the maximum fine under the applicable guidelines range). Other decisions have considered sentencing increases that have not warranted such a heightened evidentiary standard. See, e.g., Paulino, 996 F.2d at 1545 & n.4 (reasoning that the calculation of the amount of narcotics attributable to the defendant, and the resulting increase in his sentence, did not warrant the utilization of the clear and convincing standard); United States v. Mobley, 956 F.2d 450, 458-59 (3d Cir. 1992) (departing upward from a 15-21 month range to a 27- month term of imprisonment); see also United States v. Ruggiero, 100 F.3d 284, 290-91 (2d Cir. 1996) (refusing to require clear and convincing evidence where enhancements raised the defendants's offense levels by eight levels each); United States v. Rodriguez, 67 F.3d 1312, 1322-23 (7th Cir. 1995) (declining to require clear and convincing evidence for attributing 1,000 kilograms of marijuana to the defendant); United States v. Arango-Montoya, 61 F.3d 1331, 1339 (7th Cir. 1995) (rejecting the clear and convincing standard where the defendant's status as a prior drug offender increased his sentence from a range of 63-78 months' imprisonment to a term of 120 months); United

States v. Trujillo, 959 F.2d 1377, 1381–82 (7th Cir. 1992) (concluding that the preponderance of the evidence standard was appropriate where the defendant's sentence was increased from 115 months to 168 months, reflecting a six-level difference in offense level); United States v. Schuster, 948 F.2d 313, 315–16 & n.3 (7th Cir. 1991) (the difference between the 21–27 month guideline range and the 60–month sentence imposed pursuant to a statutory mandatory minimum was not so dramatic as to mandate a higher standard of proof). The application of S 4B1.4 on account of Mack's use or possession of the firearm in connection with a crime of violence raised Mack's applicable guideline imprisonment range from 188 to 235 months to 262 to 327 months. This resulted in an 83-month, or approximately thirty-nine percent, increase from the median sentence of the guideline range. Mack's actual sentence of 262 months was 27 months, or just under twelve percent, longer than the maximum guideline sentence absent that enhancement; the enhancement raised the bottom of the guideline range by some 74 months, or about thirty-nine percent. Even assuming arguendo that Kikumura's teachings apply in contexts other than upward departures,[11] the increase in Mack's sentence does not approach the 330-month, twelve-fold increase in Kikumura or the 207-month, three-fold increase in Pastor. Rather, it more closely resembles those cases rejecting the heightened burden of proof. Accordingly, the clear and convincing standard of proof is not compelled, and we review the government's proof at sentencing under the preponderance of the evidence standard.[12]

———————————————————————————————————

11. The Eighth Circuit has suggested that a heightened standard may be applicable, in certain extreme circumstances, when determining the amount of drugs attributable to a defendant convicted of violating a drug statute. See United States v. Townley, 929 F.2d 365, 369 (8th Cir. 1991); but see Rodriguez, 67 F.3d at 1323 (intimating that Kikumura's heightened scrutiny of departures from the sentencing range provided under the guidelines may not lend itself to the guidelines themselves).

12. We do not believe that Apprendi, see note 7, supra, requires a different result. Apprendi is concerned with when a fact becomes an element of the offense so as to require its determination by a jury and on the basis of proof beyond a reasonable doubt. Mack has not taken the

14

III. Sufficiency of the Evidence to Support the ACCA's
        Application

In his third claim of error, Mack contends that the
evidence does not support the district court's finding that
he possessed a firearm in connection with a crime of
violence. Specifically, Mack asserts that the evidence was
insufficient for the district court to conclude that he shot
Wessels. As noted in Part II, the district court'sfinding on
this matter must be supported by a preponderance of the
evidence. This Court reviews the district court'sfindings of
fact for clear error. See United States v. Yeaman, 194 F.3d
442, 456 (3d Cir. 1999). We conclude that the district court
did not clearly err in determining that Mack possessed the
handgun in connection with a crime of violence. Indeed the
evidence supporting that finding is more than ample.

Mack does not dispute that he possessed the .380 caliber
handgun, or that shooting someone with it is a crime of
violence.13 Rather, Mack argues that the evidence does not

_____

position before this Court that his shooting of Wessels with the weapon
was an element of the offense which had to be found by the jury or that
it had to be established beyond a reasonable doubt. Quite the contrary,
his argument here proceeds on the basis that it is a sentencing factor for
determination by the court at sentencing under a"clear and convincing"
evidence standard. Moreover, he argues that his sentence should have
been within the guideline range of 188–235 months, which necessarily
assumes that the relevant statutory maximum sentence was not the ten
years provided for in S 924(a)(2) but rather life imprisonment as provided
in S 924(e). See U.S.S.G. S 5G1.1(c)(1) (guideline sentence may not exceed
statutory maximum). While we doubtless have the authority to notice
"plain error"--cf. Fed.R. Crim. Proc. 52(b)--in an appropriate
circumstance, no such error is shown here. What was before the Court
in Apprendi were facts (other than the fact of prior conviction) "that
increase[ ] the penalty for a crime beyond the prescribed statutory
maximum." Id., 120 S.Ct. at 2362–63. That is not the case here, where
the statutory maximum is life imprisonment (see notes 4 and 7, supra).
We can find no "plain error" here. See, e.g., United States v. Aguayo–
Delgado, 2000 WL 988128 (8th Cir., July 18, 2000); United States v.
Meshack, 2000 WL 1218437 at n.18 (5th Cir. Aug. 28, 2000).

13. U.S.S.G. S 4B1.2(a) provides as follows:

"S 4B1.2. Definitions of Terms Used in Section 4B1.1

15

support the conclusion that he shot Wessels for three reasons: (1) Wessels testified at trial that Mack was not the shooter; (2) the testimony of the firearms expert did not positively identify the bullet removed from Wessels's leg as having come from Mack's handgun;14 and (3) there was no evidence on the number of guns and persons involved in the shooting outside the bar. We disagree.

Mack was in possession of a .380 caliber handgun outside the bar, and Wessels was found by the officers outside the bar with a gunshot wound in his right leg from a .380 caliber bullet. Twelve fired .380 caliber shells were lying on the ground in the area where Mack was standing and were the only .380 caliber shells recovered from the crime scene. All twelve shells were positively matched with Mack's .380 caliber handgun which was found to be operational and to contain gunshot residue in its chamber. Although the bullet removed from Wessels's leg bore insufficient markings to make a positive match with Mack's handgun, it was of the corresponding caliber and had markings consistent with it being fired from Mack's handgun. Moreover, twice on the day he was shot, Wessels made statements to the police that Mack was the gunman, although Wessels's subsequent testimony contradicted those statements. Under these facts, the district court did not err in concluding that Mack shot Wessels. The shooting

---

(a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."

Mack's asserted shooting of Wessels is clearly covered by S 4B1.2(a)(1).

14. Officer Ernest Bottomer, the firearms expert, testified that the bullet removed from Wessels's leg had probably struck bone or another foreign object, thereby damaging the bullet's condition and preventing a positive match.

16

of Wessels constitutes a crime of violence, and Mack used or possessed a firearm in connection with that crime. Accordingly, the district court properly applied U.S.S.G. SS 4B1.4(b)(3)(A) and 4B1.4(c)(2) in setting Mack's offense level at thirty-four and his criminal history category at VI. Mack has not established that the district court committed clear error.

Conclusion

We find no error in the district court's application of the ACCA to Mack's sentence. Mack's conviction and sentence are

AFFIRMED.

BECKER, Chief Judge, concurring.

I join in Judge Garwood's fine opinion. I write separately because of the implications of his footnote 12, which deals with the potential impact on this case of the Supreme Court's recent decision in Apprendi v. New Jersey, 120 S. Ct. 2348 (2000). Apprendi declared that"[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 6362-63. Viewed through the lens of the separate opinions of Justices Scalia, Thomas, O'Connor, and Breyer, see infra at 19-20, Apprendi's implications for the legitimacy of a variety of sentencing schemes, including the United States Sentencing Guidelines, have stirred enormous controversy, portending that the number of Apprendi challenges by incarcerated defendants will soon reach tidal proportions.1 While I

_____

1. One writer has suggested that thirty-nine federal and twenty state criminal statutes may be unconstitutional under Apprendi. See Brooke A. Masters, High Court Ruling May Rewrite Sentencing, Wash. Post, July 23, 2000, at A1 (citing work of Professor Susan Klein); see generally Lewis J. Liman, Initial Thoughts on `Apprendi v. New Jersey,' N.Y.L.J., July 5, 2000, at 3 ("[T]he Court's decision has the potential to reopen the
question of the constitutionality of the [sentencing] guidelines themselves
. . . ."); Tony Mauro & Jonathan Ringel, Court's Apprendi Hate Crimes Decision May Have Broad Impact on Sentencing, The Legal Intelligencer, June 28, 2000, at 4 (quoting John Steer, member of the United States Sentencing Commission, as stating that Apprendi will require the Commission to cull "through guidelines, almost guideline by guideline and offense by offense" to determine which portions comply with the decision). Apprendi most obviously implicates federal drug sentences because in such cases it is common for the judge, rather than the jury, to determine (and sentence based on) the quantity of drugs possessed. Over 41% of all federal convictions in fiscal year 1999--more than 23,000--were for drug offenses. See United States Sentencing Commission, 1999 Sourcebook of Federal Sentencing Statistics, at 11. Federal courts have been sentencing defendants under the United States Sentencing Guidelines since November 1987, and hence they will no doubt soon be required to grapple with the question whether Apprendi applies retroactively on collateral review. The Clerk of this Court has informed me that this Court has received seventeen applications to file a second or successive habeas petition raising Apprendi issues during the past six weeks. I have also been told that Apprendi is cited in nine of the last thirteen such petitions that have been received, and that two of the four that do not directly cite Apprendi raise possible Apprendi-like
issues.

ultimately conclude that we need not and should not reach the Apprendi issue in this case, the merits of that point seem to me to be close. I therefore take this opportunity: (1) to explain why the question is difficult; and (2) to identify one critical Apprendi concern that is created by the unique intersection between the Armed Career Criminal Act of 1984 ("ACCA"), 18 U.S.C. S 924(e), and the Sentencing Guidelines.

I.

Charles Apprendi fired several shots "into the home of an African-American family that had recently moved into a previously all-white neighborhood." 120 S. Ct. at 2351. The State of New Jersey charged him with, and Apprendi pled guilty to, inter alia, two counts of second-degree possession of a firearm for an unlawful purpose. See id.  at 2352. The maximum sentence for this crime under New Jersey law was ten years in prison. See id. (citing N.J. Stat. Ann. S 2C:32-6(a)(2)). Nevertheless, the trial court sentenced Apprendi to twelve years in prison, relying on a statute that allowed for an "enhanced" sentence of up to twenty years if the sentencing judge found that "[t]he defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race .. . ." Id. at 2351-52 (quoting N.J. Stat. Ann. S 2C:44-3(e)). The Supreme Court of the United States reversed Apprendi's sentence, holding that "[t]he New Jersey procedure challenged in this case is an unacceptable departure from the jury tradition that is an indispensable part of our criminal justice system." Id. at 2366.

While Apprendi itself concerned only the New Jersey hate crime statute, there are numerous suggestions in the majority, concurring, and dissenting opinions that the case's scope may be quite broad indeed. Justice Thomas's concurrence argued that any fact that alters the range of punishments to which a defendant is exposed must be found by a jury, see id. at 2379-80, acknowledging that his proposed rule might invalidate the Sentencing Guidelines themselves. See id. at 2380 n.11. Justice Scalia's concurrence maintained that "all the facts which must exist in order to subject the defendant to a legally prescribed

19

punishment must be found by the jury." Id. at 2367. Justice O'Connor's dissent expressed concern that the Court's holding "will have the effect of invalidating significant sentencing reform accomplished over the past three decades." Id. at 2394. And Justice Breyer, a key figure in the development of the Sentencing Guidelines, lamented that "the rationale that underlies the Court's rule suggests a principle . . . that, unless restricted, threatens the workability of every criminal justice system (if applied to judges) or threatens efforts to make those systems more uniform, hence more fair (if applied to [sentencing] commissions)." Id. at 2402.

The majority responded to these allegations simply by noting that "[t]he Guidelines are, of course, not before the Court. We therefore express no view on the subject beyond what this Court has already held. See, e.g., Edwards v. United States . . . ." Id. at 2366 n.21. Edwards, the only case cited by the majority, was quoted for the proposition that "a maximum sentence set by statute trumps a higher sentence set forth in the Guidelines." 523 U.S. 511, 515 (1998). The Court did not cite Mistretta v. United States, 488 U.S. 361 (1989), the case that originally upheld the constitutionality of the Sentencing Guidelines.

II.

A jury convicted Charles Mack of one count of being a felon in possession of a firearm, in violation of 18 U.S.C. S 922(g)(1) [hereinafter "the felon-in-possession statute"]. Section 924 (captioned "Penalties") contains the penalty provisions for the offenses contained in Section 922. Section 924(a)(2) states that "[w]hoever knowingly violates [the felon-in-possession statute] shall befined as provided in this title, imprisoned not more than 10 years, or both." The ACCA, codified at Section 924(e), provides that "[i]n the case of a person who violates [the felon-in-possession statute] and has three previous convictions . . . for a violent felony . . . such person shall be fined not more than $25,000 and imprisoned no less than fifteen years . . . ." While the statutory text provides only that violators shall be "imprisoned not less than fifteen years," the Supreme Court has construed this language as authorizing a life sentence.

20

See Curtis v. United States, 511 U.S. 485, 487 (1994). It is important to note, as Judge Garwood recognizes, that"[t]he ACCA is a sentence enhancement statute and does not create a separate offense." Slip. op. at 10; see also Curtis, 511 U.S. at 490 (holding that the ACCA "provides an enhanced sentence" for persons found to meet its criteria) (emphasis added).

The District Court sentenced Mack to 262 months in prison. This sentence was the result of the combination of two sentence enhancements found by the District Court pursuant to the Sentencing Guidelines. The first enhancement, which I will refer to as "the ACCA enhancement," applied because Mack was "subject to an enhanced sentence under the provisions" of the ACCA. U.S.S.G. S 4B1.4(a) (defining such an individual as "an armed career criminal"); id. S 4B1.4(b)(3)(B) (mandating that the offense level for any "armed career criminal" shall be no less than 33); id. S 4B1.4(c)(3) (enhancing the criminal history rating for all "armed career criminal[s]" to at least Category IV). A simple finding that Mack was an armed career criminal would have, without more, raised his sentencing range under the Guidelines to between 188 and 235 months. See id. S 5A.

The second enhancement, which I will henceforth refer to as the "crime of violence enhancement," applied because the District Court concluded that, in addition to being an "armed career criminal," Mack had also "possessed [a] firearm . . . . in connection with a crime of violence," i.e., the shooting of Gregory Wessels. Id. S 4B1.4(b)(3)(A);2 S 4B1.4.c.2.3 This enhancement further raised Mack's potential sentence to between 262 and 327 months. See id. S 5A.4 As noted above, the District Court ultimately sentenced Mack to serve 262 months in prison.

_____

2. Section 4B1.4(b)(3)(A) provides that "[t]he offense level for any armed career criminal" shall be no less than "34, if the defendant used or possessed the firearm . . . in connection with a crime of violence."
3. Section 4B1.4(c)(2) states that "[t]he criminal history category of an armed career criminal" shall be no less than"Category VI, if the defendant used or possessed the firearm . . . in connection with a crime of violence."
4. The Sentencing Table contained in Section 5A gives a sentencing range of between 262 and 327 months for an offender with an offense level of 34 and a criminal history category of VI.

21

III.

The Apprendi inquiry has two stages. A court must first determine the "prescribed statutory maximum" sentence for the crime of which the defendant was convicted and assess whether the defendant's ultimate sentence exceeded it. If it did, the court must consider the second-order Apprendi question: whether the enhanced sentence was based on "the fact of a prior conviction." If it was, then the sentence is constitutional.[5] If it was not, then the sentence is unconstitutional. See Apprendi, 120 S. Ct. at 2362-63.

_____

5. It is not clear how long this will be the case. The "fact of a prior conviction" exception to Apprendi's general rule is based on the Supreme Court's 1998 decision in Almendarez-Torres v. United States, 523 U.S. 224, which held that no constitutional violation occurs when a judge, rather than a jury, increases a criminal sentence beyond the otherwise prescribed statutory maximum based on the fact of prior convictions. While Apprendi incorporated the Almendarez-Torres holding into its own, see 120 S. Ct. at 2362-63 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") (emphasis added), the Apprendi majority went out of its way to cast the future viability of Almendarez-Torres into question. See id. at 2362 ("Even though it is arguable that Almendarez-Torres was incorrectly decided, and that a logical application of our reasoning today should apply if the recidivist issue were contested, Apprendi does not contest the decision's validity and we need not revisit it for purposes of our decision today to treat the case as a narrow exception to the general rule we recalled at the outset."). Moreover, as commentators have noted, five sitting Justices are now on record as saying that Almendarez-Torres was wrongly decided. See Apprendi, 120 S. Ct. at 2379 (Thomas, J., concurring); Almendarez-Torres, 523 U.S. at 248 (Scalia, J., joined by Stevens, Souter, and Ginsburg, dissenting).

I do not suggest that we should predict that the Court will overturn Almendarez-Torres. Cf. State Oil Co. v. Khan, 522 U.S. 3, 20 (1997) ("Despite what Chief Judge Posner aptly described as Albrecht's `infirmities, [and] its increasingly wobbly, moth-eaten foundations,' there remains the question whether Albrecht deserves continuing respect under the doctrine of stare decisis. The Court of Appeals was correct in applying that principle despite disagreement with Albrecht, for it is this Court's prerogative alone to overrule one of its precedents.") (emphasis added) (citation omitted). But the apprehension remains.

22

A.

In his footnote dealing with the Apprendi issue in this case, Judge Garwood resolves the inquiry at stage one, stating that "[w]hat was before the Court in Apprendi were facts (other than the fact of prior conviction)`that increase[ ] the penalty for a crime beyond the prescribed statutory maximum.' [Citing Apprendi]. That is not the case here, where the statutory maximum is life imprisonment. (see note 4 and 7, supra)." Slip op. at 14-15 n.12. I am not so sure.

What was the prescribed statutory maximum in this case? There are two possibilities. The first and most obvious answer is 120 months. The jury convicted Mack of violating the felon-in-possession statute; he was not charged with, nor convicted of, any other crime. The maximum possible sentence for violating the felon-in-possession statute simpliciter is 120 months. See 18 U.S.C. S 942(a)(2). Thus, if Mack's prescribed statutory maximum was set at the time of the jury's verdict, then his ultimate sentence of 262 months exceeded it, and the first stage of the Apprendi inquiry should be resolved in Mack's favor.

The other possibility, which Judge Garwood endorses, is that the prescribed statutory maximum in this case was life imprisonment, i.e., the maximum sentence statutorily authorized by the ACCA. See Curtis, 511 U.S. at 487. If this is true, then Apprendi is not implicated because Mack's ultimate sentence (262 months) was within the prescribed statutory maximum.

1.

While not spelled out in his opinion in these terms, Judge Garwood's position appears to be as follows: (1) a jury convicted Mack of being a felon in possession of a firearm in violation of the felon-in-possession statute; (2) the ACCA applies "[i]n the case of a person who violates [the felon-in-possession statute] and has three previous convictions . . . for a violent felony;" (3) under Apprendi, the District Court (rather than a jury) was entitled tofind that Mack "ha[d] three previous convictions . . . for a violent felony," and thus to sentence Mack under the ACCA; (4) the

23

ACCA statutorily authorizes a life sentence; (5) the prescribed statutory maximum in this case was thus life imprisonment; and, therefore, (6) Mack's ultimate sentence of 262 months was within the prescribed statutory maximum and Apprendi is not implicated.

While not without force, this approach to determining a prescribed statutory maximum is in tension with the methodology applied by the Supreme Court in Apprendi. Demonstrating why this is so requires a comparison of the sentencing mechanics at issue in this case with those at issue in Apprendi:

(1) Apprendi was "convicted of possession of a firearm for an unlawful purpose." Apprendi, 120 S. Ct. at 2351. Mack was convicted of knowingly violating the felon-in-possession statute;

(2) Absent any additional findings by the trial court, the maximum sentence that Apprendi faced would have been ten years in prison. See id. Absent any additional findings by the District Court, the maximum sentence that Mack faced would have been ten years in prison. See 18 U.S.C. S 924(a)(2);

(3) New Jersey law provided that the trial court was required to sentence Apprendi to "an extended term" of up to twenty years if it found that he "acted with a purpose to intimidate an individual . . . because of race." N.J. Stat. Ann. S 2C:44-3(e); see id. S 2C-43-7(a)(3) (providing that the extended term for a person convicted by a jury of a "crime of the second degree" shall be "between 10 and 20 years"). The ACCA provides that the District Court was required to sentence Mack to an "enhanced sentence" of up to life imprisonment, see Curtis, 511 U.S. at 487, 490, if it found that he "ha[d] three previous convictions . . . for a violent felony." 18 U.S.C. S 924(e)(1);

(4) The New Jersey trial court found that Apprendi had committed his crime "with a purpose to intimidate" and sentenced him to a "12-year term of imprisonment," which was 2 years longer than Apprendi could have been sentenced to serve but for the "purpose to intimidate" finding. 120 S. Ct. at 2352. The District

24

Court found that Mack "ha[d] three previous convictions . . . for a violent felony" and sentenced him to serve 262 months (or 21 years and 10 months) in prison, which was 11 years and 10 months longer than Mack could have been sentenced to serve but for the "three previous convictions . . . for a violent felony" finding;

(5) Apprendi held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 120 S. Ct. at 2362-63. The Supreme Court held that Apprendi's sentence violated this constitutional rule. See id. at 2363. For the Court to do so, it needed to conclude that the "purpose to intimidate" finding "increase[d] the penalty for [Apprendi's] crime beyond the prescribed statutory maximum." But if the New Jersey trial court's"purpose to intimidate" finding increased Apprendi's sentence beyond the prescribed statutory maximum, then the District Court's "three previous convictions . . . for a violent felony" finding did the same to Mack--the mechanics are identical.

2.

There are, to be sure, some differences between Apprendi and this case, but these differences are not material to the determination of the prescribed statutory maximum sentence. The first difference exists in the wording of the statutes. Apprendi was convicted of possession of afirearm with an unlawful purpose, which is defined as a"crime of the second degree." N.J. Stat. Ann. S 2C:39:4(a). Under New Jersey law, a "crime of the second degree" carries a potential sentence of "between five and 10 years." Id. S 2C:43-6. Nevertheless, a different provision of the New Jersey Code of Criminal Justice states that a trial court shall sentence a defendant to "an extended term" if it finds that the defendant "acted with a purpose to intimidate." Id. at 2C:44-3. Thus, the base level sentence for a second degree offense is provided in Section 2C:43-6 and Section

25

2C:44-3 overtly purports to authorize "an extended term" above and beyond that base sentence.

Title 18 of the United States Code operates somewhat differently. Mack's substantive offense was violating the felon-in-possession statute. Section 924 provides two different sentencing options for such a person. Section 924(a)(2) provides that "[w]hoever knowingly violates [the felon-in-possession statute] shall be . . . imprisoned not more than 10 years." The ACCA, Section 924(e)(2), provides that "[i]n the case of a person who violates[the felon-in-possession statute] and has three previous convictions . . . for a violent felony," the minimum sentence shall be fifteen years and the maximum shall be life imprisonment. Neither Section 924(a)(2) nor the ACCA contain any reference to the other.

In light of this juxtaposition, one could argue that while New Jersey law required a trial court to impose a base sentence and then to extend it after concluding that the defendant had acted with a "purpose to intimidate," federal law requires no such thing. Instead, the argument would go, a district court faced with a defendant who has been convicted of violating the felon-in-possession statute needs only to determine whether Section 924(a)(2) or the ACCA provides the appropriate sentence. And if the court concludes that the defendant "has three previous convictions . . . for a violent felony," the argument continues, it should bypass Section 924(a)(2) altogether and instead sentence under the ACCA. Under this interpretation, the ACCA did not enhance Mack's sentence, it simply determined his sentence, as though Section 924(a)(2) began with the words "except as otherwise provided in Section 924(e)."

However, this argument, which I acknowledge is not without force, appears foreclosed by Apprendi  as well. In responding to New Jersey's claim that the "purpose to intimidate" finding was merely a "sentencing factor" (that may be found by a judge) rather than an "element" (that must be found by a jury), the Court emphasized that"the relevant inquiry is one not of form, but of effect--does the required finding expose the defendant to a greater punishment than authorized by the jury's guilty verdict

26

alone?" 120 S. Ct. at 2365. Under this standard, it does not matter whether the ACCA is drafted in such a way as to "bypass" Section 924(a)(2). The question is whether the District Court's finding that Mack "ha[d] three previous convictions . . . for a violent felony" exposed him "to a greater punishment than authorized by the jury's guilty verdict alone." Based on the jury's guilty verdict alone, the longest sentence that Mack could have faced was ten years, but he was sentenced to serve over twenty years. As a result, the first Apprendi question cuts in Mack's favor.6

The second difference between this case and Apprendi is likewise irrelevant to the determination whether the"three previous convictions . . . for a violent felony"finding increased Mack's sentence beyond the "prescribed statutory maximum." In Apprendi, the Supreme Court reaffirmed that the Constitution allows a judge to increase a defendant's sentence "beyond the prescribed statutory maximum" based on "the fact of a prior conviction." 120 S. Ct. at

_____

6. This view is supported by the Ninth Circuit's recent decision in United States v. Nordby, No. 99-10191, 2000 WL 1277211 (9th Cir., Sept. 11, 2000). Nordby held "that the amount of drugs for which a defendant is sentenced under 21 U.S.C. S 841(b)(1) is" a fact that "increases the prescribed statutory maximum penalty to which a criminal defendant is exposed." Id. at *1. Nordby was convicted by manufacturing marijuana and possession of marijuana with an intent to distribute it under Section 841(a). The district court instructed the jury that"the government [was] not required to prove the amount or quantity of marijuana manufactured as long as the government proves beyond a reasonable doubt that the defendant manufactured a measurable or detectable amount of marijuana." Id. Nordby was convicted by the jury and sentenced to life imprisonment by the court. See id. Section 841(a) defines the substantive offense without specifying a penalty. Section 841(b) enumerates numerous potential penalties for violating Section 841(a) which depend on the quantity of particular drugs manufactured or possessed. The Ninth Circuit rejected the argument that "Section 841 contains `no prescribed statutory maximum,' and that therefore Apprendi does not apply to Nordby's case," noting that "Apprendi makes clear that the `prescribed statutory maximum' refers simply to the punishment to which the defendant is exposed solely under the facts found by the jury." Id. at *4. Because, absent a quantity finding, the maximum sentence that would have been authorized by Section 841(b) was five years in prison, the Ninth Circuit concluded that Norby's life sentence exceeded the prescribed statutory maximum. See id. at *4.

27

2362–63 (emphasis added). While this exception could not save the trial court's finding in Apprendi's case, which was based on the "fact" that he had acted with a"purpose to intimidate," see id. at 2363, it might save the enhancement in this case, which was based on the fact that Mack"ha[d] three previous convictions . . . for a violent felony." The possibility, however, does nothing to change the fact that the "three previous convictions" finding enhanced Mack's sentence beyond the "prescribed statutory maximum;" it simply raises the possibility that in this case the enhancement was constitutional. In other words, while this difference between Apprendi and this case may affect the outcome of the second-order Apprendi question, it is irrelevant to the resolution of the first.

In sum, I conclude that the District Court's finding, pursuant to the ACCA, that Mack "ha[d] three previous convictions . . . for a violent felony" increased his sentence beyond the "prescribed statutory maximum" as defined in Apprendi.

B.

If the foregoing is true, Apprendi would require us to ask whether Mack's sentence beyond the prescribed statutory maximum of 120 months was based on "the fact of a prior conviction." As noted above, Mack's enhanced sentence was based on two findings made by the District Court: (1) that he was an "armed career criminal," and (2) that he had "possessed [a] firearm . . . in connection with a crime of violence."

The first of these findings is--at least for now, see supra note 5--unquestionably valid under Apprendi. Under the Sentencing Guidelines, a person is an "armed career criminal" if he is "subject to an enhanced sentence under the provisions of [the ACCA]." U.S.S.G.S 4B1.4(a). The ACCA applies to any person convicted of violating the felon-in-possession statute who also "has three previous convictions . . . for a violent felony or a serious drug offense." 18 U.S.C. S 924(e)(1). The terms"violent felony" and "serious drug offense" are both defined in the statutory text, see id. S 924(e)(2)(A-B), and there has been no

28

suggestion that the felonies for which Mack had previously been convicted do not fall within the statutory language.

Apprendi problems arise, however, when the District Court's second finding is considered. For Mack to have been eligible for any sentence over 235 months, the District Court needed also to conclude that Mack had "possessed the firearm . . . in connection with a crime of violence." For while the ACCA statutorily authorizes a life sentence, see Curtis, 511 U.S. at 487, the Sentencing Guidelines operate to deprive a district court of the ability to impose it in a case such as Mack's. Even with the crime of violence enhancement, the maximum sentence allowed by the Guidelines would have been 327 months. More precisely, with the ACCA enhancement, but without the crime of violence enhancement, Mack's offense level would have been 33 and his criminal history rating would have been IV. See supra Part II. With these ratings, the maximum allowable sentence would have been 235 months. See U.S.S.G. S 5A. Even with the crime of violence enhancement (which raised Mack's offense level to 34 and his criminal history rating to VI, see supra Part II), the longest term to which the District Court could have sentenced him was 327 months. See U.S.S.G. S 5A.

In other words, with or without the two sentence enhancements, Mack could not have been sentenced to life in prison. This is because a defendant with a criminal history rating of IV (as Mack would have been without the crime of violence enhancement) is not eligible for a life sentence unless his or her offense level is at least 39. A defendant with a criminal history rating of VI (as Mack was after the crime of violence enhancement was applied) is not exposed to a potential life sentence unless his or her offense level is at least 37. See U.S.S.G.S 5A. There has been no suggestion that Mack's offense level was even potentially as high as 37, much less 39.

In this case, the District Court found that Mack had unlawfully possessed the firearm in connection with the shooting of Wessels. While shooting another person would unquestionably qualify as a "crime of violence" under the Guidelines, see id. S 4B1.2(a)(1), Mack has never been charged, must less convicted by a jury, with shooting

29

Wessels.[7] As a result, this finding does not fall within the "fact of a prior conviction" exception to Apprendi's general rule. If this logic is correct, then the maximum allowable sentence under Apprendi in this case was 235 months--27 months less than the 262 month sentence ultimately imposed.

There is, so far as I can tell, but one possible response to this argument. One could acknowledge that the "prescribed statutory maximum" in this case was 120 months and concede that Mack's sentence of 262 months exceeded it, but nevertheless assert that the (unquestionably valid) statutory ACCA enhancement increased Mack's potential sentence to life imprisonment. Because the District Court's ultimate sentence of 262 months fell within the range that could have been authorized by the ACCA finding, the argument goes, the sentence does not violate Apprendi.

The question whether a valid sentence enhancement may operate to raise the potential as well as the actual sentence for a crime beyond the prescribed statutory maximum has not been squarely addressed by the Supreme Court. Neither of the Court's recent cases involving the validity of sentence enhancements involved two separate enhancements. See Apprendi, 120 S. Ct. at 2351 (involving a single enhancement imposed if the presiding judge concluded that "[t]he defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity" (quoting N.J. Stat. Ann. S 2C:44-3(e))); Almendarez-Torres v. United States, 523 U.S. 224, 227 (1998) (involving enhancement based on the fact that the non-citizen defendant's earlier deportation had been "pursuant to" three earlier "convictions for aggravated felonies").

I am not certain of the correct answer to this question. The Supreme Court has implied that the "fact of a prior conviction" exception should be narrowly construed. Cf. Apprendi, 120 S. Ct. at 2361 (noting that the exception, first enunciated in Almendarez-Torres,"represents at best

_____

7. The evidence that Mack shot Wessels was substantial but not overwhelming. See slip op. at 3.

an exceptional departure from . . . historic practice"). Since the Supreme Court has not extended the Almendarez-Torres "exception" to cover increases in potential sentences, perhaps we should not do so either.

On the other hand, a fairly strong argument can be made that an ultimate sentence does not violate the Constitution so long as it is within the range of sentences authorized by a valid sentence enhancement. The ACCA enhancement was valid under Apprendi, and the ACCA statutorily authorizes a life sentence. See Curtis, 511 U.S. at 487. But for the Sentencing Guidelines, it appears incontestable that the District Court would have had discretion, both statutorily and constitutionally, to sentence Mack to life imprisonment. Since the Sentencing Guidelines are themselves a constitutional mechanism for channeling the discretion that a sentencing court would otherwise enjoy, see Mistretta v. United States, 488 U.S. 361 (1989), it can certainly be argued that the means by which the Guidelines channeled the District Court's discretion in this case do not implicate Apprendi. Put differently, the argument is that while perhaps Apprendi will come to mean that the enhancement for shooting Wessels violates the Constitution because it increased Mack's maximum sentence under the Guidelines, even if it did not do so under the statute, it has not yet acquired that meaning.8

IV.

Having fleshed out the potential Apprendi problem in this case, the fact is that neither Mack nor his counsel explicitly raised the issue. While it is true that Apprendi had not been decided at the time of the filing of the briefs in this case, the argument was certainly available in light of Jones v. United States, 536 U.S. 227 (1999). Dicta in Jones stated that

_____

8. I have acknowledged the plausibility of the argument that the ACCA technically did not increase but rather determined Mack's sentence because, in cases such as this one, a sentencing judge is not required to "pass through" Section 924(a)(1) in order to get to Section 924(e) (the ACCA). See supra III.A.2. But for the reasons explained above, collapsing the two provisions into one does not alter the fact that they are conceptually distinct steps in the Apprendi analysis.

31

under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.

Id. at 243 n.6. Although we doubtless have the power to do so, "[w]e do not generally consider issues not raised by the parties." Bolden v. Southeastern Pa. Transp. Auth., 953 F.2d 807, 812 (3d Cir.1991) (en banc). In light of our reluctance to make binding decisions about issues not fully briefed and argued by the parties, and because I am not certain what the proper resolution of any Apprendi challenge to Mack's sentence would be, I am content not to decide the issue. Accordingly, I am satisfied to join in the opinion and judgment of the Court.

I write separately with mixed emotions. In the wake of a retroactively unsettling Supreme Court pronouncement such as Bailey v. United States, 516 U.S. 137 (1995),9 I have no desire for a repeat performance, or to contribute to the constitutional haze enveloping the appropriate relationship between judge and jury in our system of criminal justice. I do, however, believe that it has been useful to explore one aspect of the Apprendi problem with which the judiciary will doubtless soon be required to grapple. See supra note 1 (referencing recent Apprendi-based filings in this Court).

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit
_____

9. According to a Westlaw KeyCite performed August 30, 2000, Bailey has aready been judicially cited 1893 times. It has also led to numerous re-sentencing proceedings. See, e.g., United States v. Goggind, 99 F.3d 116, 117 (3d Cir. 1996) (involving a procedural posture where Bailey had been decided while the case was originally on appeal, which necessitated a remand for a new sentencing proceeding).