UNITED STATES of America

v.

Glen NORRIS, Defendant.

No. 97 CR 705–01.

United States District Court,
E.D. New York.

Feb. 1, 2001.

Loretta E. Lynch, United States Attorney, Eastern District of New York, Nikki Kowalski, Assistant United States Attorney, of counsel, Brooklyn, NY, for United States of America.

Mildred Whalen, The Legal Aid Society, Brooklyn, NY, for Glen Norris.

MEMORANDUM AND ORDER

NICKERSON, District Judge.

Defendant Glen Norris pleaded guilty, to Count One of the indictment in this case charging that between June 17 and June 23, 1999, he and others conspired to distribute and possess with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). A second count remains pending. The statutory penalty is imprisonment for a minimum of ten years and a maximum of life.

I

The presentence report prepared by the Probation Department sets forth a summary of the "offense conduct" as follows. On June 21, 1999, Norris and an informant agreed that the informant would sell Norris six kilograms of cocaine at $18,000 per kilogram. On June 25, 1999, Norris and two of his alleged partners met with the informant in Norris's kitchen. According to a count made by the informant and one of the "partners," $90,000 in cash was on the kitchen table. The informant departed, pretending he would return with the cocaine.

When Drug Enforcement Administration agents returned they arrested Norris and the two alleged partners. The agents seized the $90,000 cash on the table and another $25,000 at the foot of the table. In response to questions by the agents,

Norris admitted there was a weapon in the house and led them to a loaded weapon on a shelf of a dresser inside a bedroom closet on the second floor.

One of the partners made post-arrest statements to the agents to the effect that on three prior occasions he had assisted Norris in counting money for cocaine purchases. Once he counted about $60,000, a second time about $90,000, and a third time about $100,000. These incidents were not alleged in the indictment but were said to have occurred some time prior to the June dates stated in the indictment.

The probation report added the $115,000 seized in Norris' residence to the total $250,000 that the partner stated he had previously counted. The report concluded that this entire amount was attributable to Norris and was sufficient to buy 20.27 kilograms of cocaine at $18,000 a kilogram.

The Base Offense Level of the offense charged in the indictment was 32, providing for a crime involving at least 5 kilograms and less than 15 kilograms of cocaine, and requiring a sentence of 135 to 168 months imprisonment for a defendant such as Norris who had a record of three prior convictions for harassment of his estranged wife.

The Probation Department added two levels, making the Base Offense Level 34, based on 20.27 kilograms. This was some 14.7 more kilograms than the 6 kilograms allegedly involved on the two dates of June 21 and June 25, 1998 stated in the indictment.

To the level 34 the report then added a further two level "enhancement" pursuant to guideline 2D1.1(b)(1) because the loaded weapon was "likely" connected with the offense, so as to reach a level 36 calling for imprisonment of 210–262 months.

The above calculations show the substantial difference in the time Norris will have to serve in prison depending on whether or not the enhancements adopted by the probation report are applied.

Defense counsel argued to the court that Norris should not receive a two level enhancement for the possession of a gun, contending that it was "clearly improbable" that possession of the gun was connected to the offense. Counsel also objected to the increase of a further two levels attributable to the addition of fourteen kilograms based on the alleged three drug transactions.

II

The court requested the parties to address the questions (1) whether the United States Constitution prohibits a court from increasing Norris's sentence beyond the maximum fixed by the sentencing guidelines for the elements of the crime alleged in the indictment to which he pleaded guilty and (2) whether under the Constitution the court may deprive Norris of a jury trial and by itself determine the facts by a preponderance of the hearsay evidence to justify the two enhancements.

III

In his allocution pleading guilty to the indictment Norris admitted to dealing in cocaine on June 17 and June 23, 1999. But he did not admit to possession of a weapon in connection with the offense. Nor did he admit to the claimed earlier counting of money to buy cocaine.

All the other critical facts recited in the Probation Report were supplied in hearsay statements by the informant, one of the conspirators, or the agents. The government advised the Probation Department that there was no evidence Norris ever carried a weapon in any prior dealings with the informant and therefore that the government believed that a two level enhancement was not warranted. The Probation Department disagreed, and concluded that the enhancement should be applied "unless it was clearly improbable that the weapon was connected to the offense." The government then acquiesced in this conclusion and agreed to application of the enhancement.

Both of the "enhancements" were based on supposed acts by Norris, proven, if at all, before the judge but not the jury, and by a preponderance of the evidence, not beyond a reasonable doubt.

The reasoning of the Supreme Court in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), if it is applicable in this case, is pertinent in two respects. First, the court held that the Fourteenth and Sixth Amendments to the Constitution of the United States entitle a criminal defendant to "a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt," *Id.* 120 S.Ct. at 2356. Indeed, "[t]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id.* and cases cited.

■ The receipt, possession or storing of a stolen weapon that has moved in interstate commerce is a federal crime, 18 U.S.C. § 924(a)(2). Neither this alleged crime, nor the further narcotics crimes about which Norris's partner allegedly spoke, is a lagniappe. Both were accusations, although not in the indictment, of serious substantive offenses. In fact, the cocaine transactions asserted in hearsay were twice as serious as the crime charged in the indictment. To hold that these crimes may be punished on a finding by a judge based solely on a preponderance of the hearsay evidence is inconsistent with the reasoning of *Apprendi.*

The other respect in which *Apprendi* is pertinent to this case is the holding that the a judge may sentence only "within limits fixed by law." 120 S.Ct. at 2358.

In *Apprendi,* a case involving a conviction in the courts of the State of New Jersey, the New Jersey statute fixed the maximum imprisonment for the crime charged, possession of a firearm for an unlawful purpose, at ten years. A separate statute, (the "hate crime law"), pro-

vided for an "extended term" of between 10 and 20 years, if the judge found by a preponderance of the evidence that the defendant's purpose was to intimidate others because of, among other things, race or color.

The trial judge, after a hearing, found by a preponderance of the evidence that Apprendi did have such a purpose. He imposed a sentence of 12 years, two years longer than the ten years maximum fixed by New Jersey law for the crime with which Apprendi had been charged.

After passage of the Sentencing Reform Act in 1984, 18 U.S.C. § 3551 *et seq.,* the statutes adopted by Congress continued to provide outer limits for criminal sentences. But the Guidelines, euphemistically so called, promulgated provisions fixing, within statutory limits, the maximum sentence a judge could impose under the Guidelines based on the conduct charged in the indictment and the number of previous convictions the defendant had on his record.

The Act also provided for a panoply of "guidelines" providing for "sentencing factors," aggravating or mitigating the punishment of the defendant in accordance with the Sentencing Commission's opinion as to an appropriate sentence.

■ In this case the statutory minimum and maximum prison sentence for conspiracy to distribute and to possess with intent to distribute 5 kilograms or more of a substance containing a detectable amount of cocaine is not less than ten years or more than life. 21 U.S.C. § 841(b)(1)(A)(ii).

As noted above, under the Guidelines the so-called base level for conviction for the crime charged against Norris, requires a sentence of 135 up to 168 months, given that defendant had a record of three previous convictions. The Probation Department raised this base level to a base level for a sentence of 210 to 262 months.

These figures, while not reflecting other adjustments, both up and down and not in dispute between the parties, are sufficient

to show that the maximum punishment Norris could be increased from 14 to about 22 years if the court were to find by a preponderance of the evidence and take into account the hearsay facts recited in the Probation Report.

In short, if the reasoning of *Apprendi* as to a defendant's constitutional rights applies here, Norris will serve about eight fewer years in prison.

The government argues that "every Circuit" that has considered the issue has concluded that such sentencing guideline enhancements that result in a sentence below the "statutory" maximum in the present case life imprisonment "do not run afoul of the holding or reasoning of *Apprendi*."

It is true that various Circuit Courts have said that *Apprendi* does not apply where non-jury factual findings increased the range of punishment provided the sentence imposed does not exceed the maximum that Congress fixed by statute for the crime. See, e.g., *United States v. Scheele,* 231 F.3d 492, 497, n. 2 (9th Cir. 2000); *United States v. Meshack,* 225 F.3d 556, 576 (5th Cir.2000); *United States v. Williams,* —— F.3d —— (3d Cir.2000); *United States v. Nealy,* 232 F.3d 825, 829, n. 3 (11th Cir.2000); *United States v. Doggett,* 230 F.3d 160, 165 (5th Cir.2000); *Talbott v. Indiana,* 226 F.3d 866, 869 (7th Cir.2000).

In this court's opinion these decisions take an improperly narrow view of the functions that Congress has entrusted to the Sentencing Commission. The Commission's function is not to guide or give advice to a Federal Court; it is to promulgate provisions, that is, laws that, unless they are unconstitutional, the federal courts are bound by law to follow on pain of being reversed. 18 U.S.C. § 3742. In the felicitous words of Justice Scalia in his dissent in *Mistretta v. United States,* 488 U.S. 361, 427, 109 S.Ct. 647, 682, 102 L.Ed.2d 714 (1989), the Sentencing Reform Act of 1984 created "a new Branch altogether, a sort of junior varsity Congress", not controlled or supervised by any government branch or anyone else except by new legislation passed by Congress.

Whatever may be said about the merits of *Mistretta's* conclusions that in creating the Sentencing Commission the Congress neither delegated "excessive legislative power", nor "upset the constitutionally mandated balance of power among the coordinate Branches", *id.* 488 U.S. at 412, 109 S.Ct. 647, 675, 102 L.Ed.2d 714, the majority opinion made no mention of the effect, if any, of the Guidelines on "private rights." *Mistretta* thus is no authority for depriving Norris of the Constitutional protection of a jury trial or for watering down his Constitutional right to require the government to prove beyond a reasonable doubt every fact necessary to constitute the crime with which he was charged.

One Circuit Court case has stated that there was a "colorable argument" that the sentencing Guidelines provide the equivalent of statutory maximums. As the court said, the Guidelines have "the force and effect of laws" and are "legally binding enactments in a manner nearly indistinguishable from congressionally enacted criminal statutes", particularly because the sentencing ranges promulgated by the Commission, including their maximums and minimum's, "are incorporated into the federal statutes by 18 U.S.C. § 3553(b)". *United States v. Kinter,* 235 F.3d 192, 200 (4th Cir.2000).

But the *Kinter* court nevertheless concluded that sentencing enhancements based on facts found by a judge do not offend *Apprendi.* The court reasoned that while Congress "delegated significant legislative power to the Commission" to promulgate Guidelines for every federal criminal offense "the substance of that delegation is decidedly nonlegislative in character."

The court characterized the Commission's fixing of binding "guidelines", including maximums, as "categorically different" from the "legislative" act of setting maximum penalties. The difference was said to be that Guidelines "merely guide the discretion of district courts" and are merely

"a constitutional mechanism for channeling the discretion that a sentencing court would otherwise enjoy" in the absence of the Guidelines, *id.* at 201, (quoting from a concurring opinion in *United States v. Mack*, 229 F.3d 226, 244 (3d Cir.2000)).

The Guidelines, despite the name bestowed upon them, do not "guide" a district court. Rather they direct a district court. Moreover, a distinction between a maximum set by a statute and a maximum set by a commission, with authority to do so, and "incorporated into" the authorizing statutes, has no significance in determining the basic Constitutional questions that *Apprendi* poses.

Does an individual accused of a crime have a right to a jury trial and a right to require the government to prove beyond a reasonable doubt every fact necessary to constitute the crime fixed by binding law? Since the maximum fixed by the Guidelines is binding as a matter of law, the answer can hardly be in doubt.

The Federal Courts once had discretion to impose any sentence they chose, up to the statutory maximum. Now after adoption of the Guidelines the courts have lost that broad discretion. Indeed it was a central purpose behind the legislation creating the Guidelines to curb the courts' discretion so as to abolish the "disparities" in the sentences of individual judges. See *Mistretta*, 488 U.S. at 365, 366, 109 S.Ct. at 651, 652. It is hardly persuasive to argue that the discretion somehow still lives but has been transmogrified into Guidelines.

The statement that the Guidelines simply "channel" the discretion a court previously had but no longer has seems to this court more an *ignis fatuus* than a serious argument.

The court will sentence Norris at 11 A.M. on February 23, 2001.

So ordered.