942 A.2d 174

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Edward GORDON, Appellant.**

Supreme Court of Pennsylvania.

Argued April 16, 2007.

Decided Dec. 28, 2007.

232

Karl Baker, Esq., Peter Rosalsky, Esq., Defender Association of Philadelphia, Philadelphia, for Edward Gordon.

Hugh J. Burns, Jr., Esq., Peter Carr, Philadelphia District Attorneys Office, for Commonwealth of Pennsylvania.

BEFORE: CAPPY, C.J., and CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN and FITZGERALD, JJ.

### *OPINION*

Justice BALDWIN.

In this matter, we are called to resolve whether Appellant Edward Gordon's constitutionally guaranteed right to trial by jury was violated. We granted allocatur limited to resolution of whether it violates the United States and/or Pennsylvania Constitutions when a judge, not a jury, finds by a preponderance of the evidence, not beyond a reasonable doubt, that the defendant has been convicted of multiple crimes of violence arising from separate criminal transactions.

The issue arises in the context of Appellant's challenge to the constitutionality of the "Three Strikes" sentencing provision of 42 Pa.C.S. § 9714 on grounds that it violates *Apprendi*

*v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and its progeny.[1,2] It seems to be a settled question in Pennsylvania that *Apprendi*-based challenges raise questions related to the legality of a sentence, and not the discretionary aspects of it. *See e.g. Commonwealth v. Robinson,* 931 A.2d 15, 21 (Pa.Super.2007) (" '[I]llegal sentence' is a term of art that our Courts apply narrowly, to a relatively small class of cases [including . . . ] claims implicating the rule in *Apprendi* . . . ."). When addressing such questions of law, we employ a plenary scope of review. *See e.g. C.B. ex rel. R.R.M. v. Com., Dept. of Public Welfare,* 567 Pa. 141, 148, 786 A.2d 176, 180–81 (2001). Our standard of review is *de novo. See South Newton Twp. Electors v. South Newton Twp. Sup'r, Bouch,* 575 Pa. 670, 674, 838 A.2d 643, 645 (2003). For reasons explained in detail below, we affirm the decision of the Superior Court. The factual background in this matter is as follows.

1. In *Apprendi,* the United States Supreme Court held a New Jersey hate-crime statute unconstitutional because it permitted the imposition of a twenty year sentence in place of the otherwise applicable ten year maximum if the judge determined, by a preponderance of the evidence, that the crime was perpetrated in violation of the statute. The United States Supreme Court determined that any facts, "other than the fact of a prior conviction," that subject a defendant to any additional penalty beyond a statutory maximum must be submitted to a jury and be found proved beyond a reasonable doubt. *Id.* at 490, 120 S.Ct. at 2362.

2. As explained in detail below, Appellant's constitutional claims, that his right to trial by jury and to have the separateness at issue be proved beyond a reasonable doubt were violated, are based generally on the case law interpreting the federal and state Constitutions. Appellant generally contends that the "Due Process Clause of the Fourteenth Amendment to the United States Constitution, which is applicable to state criminal proceedings, incorporates the protections of jury trial and the evidentiary burden of beyond a reasonable doubt, in some components of the criminal process." Brief of Appellant at 17 n. 5. Beyond this, Appellant fails to identify the particular Constitutional provisions upon which he specifically relies. However, it is clear that the federal case law relied upon by Appellant has interpreted the issue before this Court vis a vis the due process, notice, and jury trial guarantees of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. *Apprendi.* Although Appellant fails to develop an argument that the Pennsylvania Constitution provides a separate basis to reverse the decision below, we note that in the past we have considered similar arguments against the backdrop of Article 1, Sections 6 and 9 of the state Constitution. *See Aponte,* and note 11, *infra.*

On February 28, 2002, seventeen-year old Dion Johnson, walking down a street near his home in Philadelphia, was hustled by two gun-wielding men into a waiting car. One of the two men was Appellant. A third assailant then drove the group to a telephone booth from which Johnson's father was called and informed of the kidnapping. Then, blindfolded, Johnson was then taken to an unfamiliar house.

Over the next day and a half, Johnson was tied to a chair, and his captors repeatedly threatened him with firearms, including the cycling of an unloaded handgun behind his head. Ransom demands were repeatedly made of Johnson's father, and the men threatened to cut off one of Johnson's fingers. At one point, Johnson was driven back to the phone booth so that his father could hear Johnson's voice, presumably to prove that his son remained alive. The captors demanded $50,000 from Johnson's father. After Johnson was taken back to the house, only one of the captors remained with Johnson; the other two men left the premises for reasons explained below. Eventually, the sole remaining captor grew bored and left Johnson by himself. Once alone, Johnson broke free, left the house, and contacted police. *Commonwealth v. Gordon*, No. 0204–1438 1/3, slip op. at 2–3 (Ct. of Com. Pleas of Philadelphia Cty. July 22, 2004) (Trial Ct. slip op.).

Appellant and his co-conspirators were apprehended as a result of Johnson's father's collaboration with the police. Following the ransom calls, Johnson's father arranged to pay the kidnappers a total of $27,000. A bag containing the purported ransom money was then dropped off by Johnson's father at a prearranged location. Although the bag had only seven dollars and police forms in it, Appellant and one of his partners picked up the bag shortly after it was dropped off. When the police announced themselves, a foot chase ensued, during which both suspects dropped handguns. Appellant's partner was observed to have dropped the ransom bag. Both men were arrested; each made incriminating statements while being held in neighboring cells at the police station. *Id.* at 3. Following a trial that concluded on March 3, 2004, Appellant was convicted of kidnapping (18 Pa.C.S. § 2901), conspiracy

(18 Pa.C.S. § 903) and two violations of the Uniform Firearms Act (18 Pa.C.S. § 6101). Trial Ct. slip op. at 5.

At the April 26, 2004 sentencing hearing, it was stipulated by the parties that official court records would reveal Appellant's two prior first-degree felony convictions of robbery. Also at the sentencing hearing, the Commonwealth provided certified court records that indicated Appellant had been sentenced to twenty-five to fifty years of imprisonment on December 19, 2003 for yet another first-degree felony robbery conviction.[3]

Following the sentencing hearing, Appellant was sentenced to life in prison upon conviction of kidnapping pursuant to the mandatory sentencing provision of 42 Pa.C.S. § 9714.[4] Section 9714 provides in relevant part as follows:

Sentences for Second and Subsequent Offenses.

(a) Mandatory sentence.

. . .

(1) Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Upon a second conviction for a crime of violence, the court shall give the

3. Arguing for imposition of a sentence pursuant to Section 9714, the Commonwealth pointed out to the sentencing court that Appellant had over twenty prior arrests, including nine prior convictions. Of these prior convictions, the convictions upon which the Commonwealth argued for application of Section 9714's enhanced penalties included a robbery in Philadelphia County for which he was arrested in September 1987 and sentenced in May 1988, and another robbery in Philadelphia County for which he was arrested in December 1987 and also sentenced in May 1988. *See* N.T. April 26, 2004 Sentencing Hearing at 21–24, 31–36. Notably, the December 19, 2003 sentence could only have been imposed pursuant to that court's determination that Section 9714's enhanced penalties applied.

4. Appellant would have been subject to a sentence of no more than twenty years of imprisonment on the kidnapping conviction had he not been subjected to the enhanced penalties authorized by Section 9714.

person oral and written notice of the penalties under this section for a third conviction for a crime of violence. Failure to provide such notice shall not render the offender ineligible to be sentenced under paragraph (2).

(2) Where the person had at the time of the commission of the current offense previously been convicted of two or more such crimes of violence arising from separate criminal transactions, the person shall be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Proof that the offender received notice of or otherwise knew or should have known of the penalties under this paragraph shall not be required. Upon conviction for a third or subsequent crime of violence the court may, if it determines that 25 years of total confinement is insufficient to protect the public safety, sentence the offender to life imprisonment without parole.

(a.1) Mandatory maximum.

An offender sentenced to a mandatory minimum sentence under this section shall be sentenced to a maximum sentence equal to twice the mandatory minimum sentence, notwithstanding 18 Pa.C.S. § 1103 (relating to sentence of imprisonment for felony) or any other provision of this title or other statute to the contrary.

. . .

(d) Proof at sentencing.

Provisions of this section shall not be an element of the crime and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The sentencing court, prior to imposing sentence on an offender under subsection (a), shall have a complete record of the previous convictions of the offender, copies of which shall be furnished to the offender. If the offender or the attorney for the Commonwealth contests the accuracy of the record, the court shall schedule a

hearing and direct the offender and the attorney for the Commonwealth to submit evidence regarding the previous convictions of the offender. **The court shall then determine, by a preponderance of the evidence, the previous convictions of the offender and, if this section is applicable, shall impose sentence in accordance with this section. . . .**

. . .

(g) Definition.

As used in this section, the term "crime of violence" means murder of the third degree, voluntary manslaughter, aggravated assault as defined in 18 Pa.C.S. § 2702(a)(1) or (2) (relating to aggravated assault), rape, involuntary deviate sexual intercourse, aggravated indecent assault, incest, sexual assault, arson as defined in 18 Pa.C.S. § 3301(a) (relating to arson and related offenses), kidnapping, burglary of a structure adapted for overnight accommodation in which at the time of the offense any person is present, robbery as defined in 18 Pa.C.S. § 3701(a)(1)(i), (ii) or (iii) (relating to robbery), or robbery of a motor vehicle, or criminal attempt, criminal conspiracy or criminal solicitation to commit murder or any of the offenses listed above, or an equivalent crime under the laws of this Commonwealth in effect at the time of the commission of that offense or an equivalent crime in another jurisdiction.

42 Pa.C.S. § 9714 (as amended December 20, 2000). (emphasis added).[5] Appellant was further sentenced to seventeen-to-thirty-four years of incarceration for the conspiracy and the firearms violations, to run consecutive to the life sentence. A direct appeal followed. Trial Ct. slip op. at 5.

Before the Superior Court, Appellant raised several challenges. For purposes of the limited grant of review allowed by this Court, Appellant argued that his right to a trial by jury, guaranteed by the United States and Pennsylvania Con-

5. We ruled an unrelated portion of this statute to be unconstitutional in *Commonwealth v. Butler*, 563 Pa. 324, 760 A.2d 384 (2000), on procedural due process grounds.

stitutions, was violated by application of the sentencing provisions of Section 9714. He contended that he was entitled to have a jury, not a judge, assess the interrelatedness of his prior crimes and that Section 9714, which instructs the sentencing court to make this determination by a preponderance of the evidence, is therefore constitutionally infirm.[6] *Commonwealth v. Gordon*, No. 1326 EDA 2004, slip op. at 6–7 (Pa.Super. Ct. April 20, 2006) (Super. Ct. slip op.). This argument was unsuccessful.

First, a majority of the Superior Court panel found that Appellant's challenge fell within the "fact of a prior conviction" exception provided by *Apprendi*.[7] Then, as an apparently separate basis for its decision, the Superior Court further opined that this Court's decision in *Commonwealth v. Bradley*, 575 Pa. 141, 834 A.2d 1127 (2003) determined that "the question of whether separated crimes constitutes separate criminal transactions for purposes of Section 9714(a)(2) was one of law, and fell within the province of the court." Superior Ct. slip op. at 8. Thus, regarding whether Section 9714 called for the sentencing court to find a fact or to resolve a question of law, the Superior Court held there was no merit to Appellant's constitutional challenge to a judge determining whether the predicate crimes arose from separate criminal transactions. *Id.* at 7–8.

Despite this, another of Appellant's arguments before the Superior Court met with success. The panel noted that at the time the sentence was issued, Appellant was also serving time for other convictions to which the twenty-five year minimum for the instant crime would have been added. Under the circumstances, the length of time Appellant would have been

6. We note that Section 102 of Title 42, Judiciary and Judicial Procedure, defines "court" to include "any one or more of the judges of the court who are authorized by general rule or rule of court, or by law or usage, to exercise the powers of the court in the name of the court." It is clear that "court" does not also mean "jury." *See Mishoe v. Erie Ins. Co.*, 573 Pa. 267, 274–75, 824 A.2d 1153, 1157 (2003) (holding that the Judicial Code's definition of "court" is limited to the role of judges and for purposes of the statute the word does not also include "jury" within its ambit.).

7. *See* note 1, supra.

in prison (had the sentencing court issued Section 9714's twenty-five year sentence, rather than life imprisonment) could not have resulted in Appellant's release until he was over ninety years old. Under the statute, a life sentence *may* be imposed if the court determines "that twenty-five years of total confinement is insufficient to protect the public safety." 42 Pa.C.S. § 9714(a)(2). The Superior Court found no support in the record to conclude that Appellant, who would be at an advanced age upon completion of all his sentences, would be a threat to public safety upon completion of his various sentences and that issuing a life sentence was an abuse of discretion. Super Ct. slip op. at 9–10. Indeed, the Commonwealth conceded that the life sentence was unsupported by the record. *Id.* As such, the life sentence was vacated, and the matter was remanded.[8] However, Appellant elected to pursue his argument that Section 9714 is unconstitutional, and filed a Petition for Allowance of Appeal with this Court. We granted limited review to address this matter of first impression. *Commonwealth v. Gordon*, 590 Pa. 8, 911 A.2d 505 (2006) (*alloc.* granted).[9]

8. Judge Todd filed a concurring memorandum in which she opined that the life sentence did not constitute an abuse of discretion; she found that the sentence imposed had sound reasoning. *Commonwealth v. Gordon*, 902 A.2d 976 (Pa.Super.2006) (Todd, J. concurring). Nevertheless, Judge Todd concurred with the majority that the sentence should be vacated because, in her view, Appellant's argument was correct that Section 9714 violated the right to trial by jury under the *Apprendi* line of case "to the extent that it permits a trial court to sentence a defendant to life imprisonment if the trial court, as opposed to a jury, determines that a sentence of [twenty-five] years imprisonment is insufficient to protect the public safety." Super. Ct. slip op. at 3 (Todd, J., concurring). Since Appellant's life sentence was vacated and Appellant did not pursue this argument in his Petition for Allowance of Appeal, the concerns raised in Judge Todd's concurring opinion are not at issue here. The Appellant's Petition for Allowance of Appeal concerned only the "separate criminal transactions" language of § 9714(a)(2).

9. The closest this Court has come to addressing this question in relation to § 9714(a)(2) was in *Commonwealth v. Belak*, 573 Pa. 414, 420 n. 10, 825 A.2d 1252, 1256 n. 10 (2003). The appellant in *Belak* challenged the Three Strikes statute on *Apprendi* grounds, insisting that whether his predicate convictions were crimes of violence must have been submitted to a jury, but failed to properly raise the issue. "Belak did not raise this issue in his petition for allowance of appeal or in his

In a straightforward argument in this Court, Appellant concedes it is settled that as a general proposition, under both Pennsylvania and federal law, the existence of predicate convictions can be determined by a sentencing judge based upon a preponderance of the evidence. This was made clear by the United States Supreme Court beginning with *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), and by this Court in *Commonwealth v. Aponte*, 579 Pa. 246, 855 A.2d 800 (2004), *cert. denied*, 543 U.S. 1063, 125 S.Ct. 886, 160 L.Ed.2d 792 (2005). Therefore, Appellant's arguments are limited to illustrating why Section 9714 requires more than simply ascertaining the existence of predicate convictions. In other words, Appellant insists that the determination of whether prior convictions arose from *separate* criminal transactions is a question of fact that falls within the net circumscribed by the line of cases led by *Apprendi*, and that the exception carved out for "the fact of a prior conviction" does not save Section 9714 from his challenge. "The fact of a prior conviction is considerably narrower than facts about this conviction." Brief of Appellant at 10. Rather, "[t]he fact 'of' a prior conviction only contemplates recognition of the bare existence of the conviction. Facts going beyond the bare existence of the prior conviction, such as the relatedness of one criminal conviction to the other, are a wholly different matter." *Id.* at 21.

Pointing to the basis for the "fact of a prior conviction" exception (*See Aponte*, infra) Appellant illustrates the different finding required by Section 9714. "Whether two predicate convictions arise from separate criminal transactions is not an element of either of the two predicate convictions, and, therefore, is not established merely by accepting the validity of the prior judgments of conviction." Brief of Appellant at 21. In sum, Appellant insists that the inquiry into the interrelatedness of prior convictions, if any, is a clear step beyond the "the language of, and the rationale underlying", *Apprendi's* exception for "the fact of a prior conviction." *Id.* at 246, 855 A.2d

initial brief to this Court, but rather, raised it for the first time in his reply brief," so we did not address it. *Id.*

800. The facts needed to apply Section 9714 cannot simply be harvested from the official court records of the predicate convictions. This requires the sentencing court to assess the relationship between those convictions in order to determine if they are, indeed, separate criminal transactions. The Appellant insists that the need to consider the logical and temporal relationship between the predicate convictions takes Section 9714 outside the scope of the exception to *Apprendi:*

> For example, it would be hard to even imagine a 1980 murder and a 1995 rape as not arising from separate criminal transactions. But that only makes the "separate criminal transactions" fact-finding determination an easy or obvious one to make. [Nevertheless,] it does not remove it from the realm of fact-finding....

Reply Brief of Appellant at 7. Using such an example, Appellant illustrates his argument that the *Apprendi* decision has no exception for obviousness, either in the context of a trial or at sentencing. According to Appellant, even where it is obvious a criminal defendant is guilty, his or her right to a jury trial remains inviolate. Similarly, in this sentencing context, the only exception is for facts that have already been proved within the confines of due process, the right to a trial by jury, and the "beyond a reasonable doubt" burden of proof. It follows, then, that since the relationship between the predicate convictions is not a fact of *any* convictions, the safeguards that justify the existence of the exception cannot apply to an assessment of interrelatedness under Section 9714.[10]

Given these positions, Appellant insists the Superior Court's reliance upon *Bradley* as a basis to dismiss his challenge to Section 9714's constitutionally, was misplaced. *Bradley* was not a case decided on *Apprendi* grounds. Further, Appellant contends that the *Bradley* holding established only that a challenge to the legality of the imposition of a sentence

10. We note that Appellant does not offer any basis for this Court to conduct a different analysis under the Pennsylvania Constitution. Although Appellant argues the jury trial guarantees of both constitutions are violated, he acknowledges the result that obtains from this Court's analysis, whatever it may be, will be the same under both state and federal constitutions. Brief of Appellant at 26.

pursuant to Section 9714 required statutory construction and established the definition of "transaction" within the meaning of the statute.

The Commonwealth candidly acknowledges that, in the wake of *Apprendi*, Section 9714 is open to the challenge to its constitutionality:

> If the prior conviction exception encompasses facts demonstrating the separateness of the prior offenses, such as the dates and locations of the crimes, that are inherently subsumed within the prior convictions, [S]ection 9714 is constitutionally sound.... If, however, the prior conviction exception is so narrow that it does not cover such basis matters, which can be established by reference to official court documents, that aspect of [S]ection 9714 violates the due process principle articulated in *Apprendi* and *Aponte*.

Brief of Appellee at 12. However, the Commonwealth explains that Section 9714 is constitutionally sound because it authorizes the sentencing court to resolve a legal question based upon facts that are of, or about, the predicate conviction(s). Relying principally upon the list of materials a sentencing court may consider identified in the plurality decision of the United States Supreme Court in *Shepard v. United States,* 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), discussed *infra,* the Commonwealth argues that the assessment of the separateness of prior convictions is a legal question that can be resolved by looking to the facts of prior convictions, namely the date and location of those predicate crimes.

> [I]f it already has been admitted or proved beyond a reasonable doubt that a defendant committed his prior violent crimes on particular dates (or at particular locations or against particular victims), the dates (or locations or victims) of those crimes are part of the fact of his prior convictions.

Brief of Appellee at 18.[11]

With regard to the *Bradley* decision, the Commonwealth argues that the Superior Court correctly construed that decision to hold that a sentencing court may issue a sentence under Section 9714 based upon facts of prior convictions derived from *Shepard*-approved sources, after making the legal conclusion that the predicate crimes arose from separate criminal transactions. Brief of Appellee at 18.

■■■■ As a general matter, Pennsylvania's sentencing scheme, with its guidelines and suggested minimum sentences, is "indeterminate, advisory, and guided" in its nature. *Commonwealth v. Yuhasz*, 592 Pa. 120, 923 A.2d 1111, 1117 (2007). Therefore, in Pennsylvania, a sentence imposed for a given conviction does not implicate *Apprendi* concerns unless that sentence exceeds the applicable statutory maximum. *See generally Commonwealth v. Bromley*, 862 A.2d 598, 603

---

**11.** The Commonwealth also relies upon federal decisions that have found no *Apprendi*-based due process violation occurs when a judge determines whether prior felony or drug offenses were committed on occasions different from one another, pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1). Brief of Appellee at 19–24. Section 924(e)(1) provides:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

18 U.S.C. § 924(e)(1). We find the cases cited by the Commonwealth to be unpersuasive, however, because of the critical difference between the objective determination required under this federal statute and the subjective one required under the Pennsylvania statute here at issue. As Appellant ably points out in his Reply Brief, the federal statute requires only that the predicate crimes occurred on different dates. The terminology at issue in these statutory interpretation cases is necessarily not instructive on the matter before this Court, which interprets only Section 9714. *Shepard* makes clear that the determination required under the federal statute there at issue is one that falls within the fact of a prior conviction exception to the *Apprendi* rule. The matter *sub judice*, however, is not quite as plain because the separateness or interrelatedness of prior crimes is not dependent on the occurrence being on the same or different dates.

(Pa.Super.2004), *appeal denied*, 584 Pa. 684, 881 A.2d 818 (2005), *cert. denied*, 546 U.S. 1095, 126 S.Ct. 1089, 163 L.Ed.2d 863 (2006). Pennsylvania judges retain broad discretion to sentence up to and including the maximum sentence authorized by statute; "the only line that a sentence may not cross is the statutory maximum sentence." *Yuhasz*, 923 A.2d at 1119. For kidnapping, a felony of the first-degree, the statutory maximum is, as explained above, twenty years of imprisonment. *See* 18 Pa.C.S. § 2901.

The matter *sub judice* presents an *Apprendi* concern only because Appellant was issued a sentence of twenty-five to fifty years, pursuant to Section 9714, which exceeded the otherwise applicable statutory maximum of twenty years that was authorized by the jury verdict. This case is therefore located squarely in *"Apprendi*-land." *See Ring v. Arizona*, 536 U.S. 584, 613, 122 S.Ct. 2428, 2445, 153 L.Ed.2d 556 (2002) (Scalia, J., concurring).

Shortly after *Apprendi* was decided, the Third Circuit identified a two-part test to assess *Apprendi*-based challenges to federal sentencing statutes:

A court must first determine the prescribed statutory maximum sentence for the crime of which the defendant was convicted and assess whether the defendant's ultimate sentence exceeded it. If it did, the court must consider the second-order Apprendi question; whether the enhanced sentence was based on the fact of a prior conviction. If it was, then the sentence is constitutional. If it was not, then the sentence is unconstitutional.

*United States v. Williams*, 235 F.3d 858, 863 n. 4 (3d Cir.2000) (citing *United States v. Mack*, 229 F.3d 226 (3d Cir.2000)). This test has been applied by state courts. *See e.g. Commonwealth v. Lowery*, 784 A.2d 795 (Pa.Super.2001) (counsel not ineffective for failing to raise *Apprendi*-based claim where sentence was less than statutory maximum).

Here, it is a variety of this "second order" question that Appellant challenges, i.e., whether facts *about* prior convictions, as opposed to the fact *of* a prior conviction, must be

proved to a jury beyond a reasonable doubt in the wake of *Apprendi*. The fact *of* Appellant's prior convictions, i.e. whether they exist, is not in dispute. Indeed, Appellant stipulated to their existence. Rather than their existence, however, facts *about* the predicate convictions are *not* all within the established parameters of the prior conviction exception set forth in *Apprendi*. When it comes to such "second order" questions, the United States Supreme Court has established a continuum of sorts; while some facts about prior convictions need not be submitted to a jury for proof beyond a reasonable doubt, other facts are "too far removed from the conclusive significance of [the] prior judicial record, and too much like the findings subject to ... *Apprendi*," for a judge to resolve. *Shepard v. United States*, 544 U.S. 13, 25, 125 S.Ct. 1254, 1262, 161 L.Ed.2d 205 (2005).

█ In *Commonwealth v. Aponte*, this Court ruled on an issue similar to that raised in the instant case, but in the context of another Pennsylvania statute. There, we granted allocatur to review whether 35 P.S. § 780–115(a),[12] which doubles the statutory maximum penalty upon proof of a prior conviction for a similar offense without requiring proof beyond a reasonable doubt before a jury, violates due process under the Pennsylvania and United States Constitutions. We concluded the enhancement was constitutionally valid, and explained:

> [I]n cases where the fact which increases the maximum penalty is not a prior conviction and requires a subjective assessment, anything less than proof beyond a reasonable doubt before a jury violates due process. Additionally, any judicial finding which results in punishment beyond the statutory maximum must be submitted to a jury and proven beyond a reasonable doubt. Where, however, the judicial finding is the fact of a prior conviction, submission to a jury is unnecessary, since the prior conviction is an

12. Section 780–115(a) doubles available penalties following a second or subsequent conviction for violating The Controlled Substance, Drug, Device and Cosmetic Act, 75 P.S. § 780.

objective fact that initially was cloaked in all the constitutional safeguards, and is now a matter of public record.
. . .
Although the fact of appellant's prior drug convictions was not required to be pled in the information charging appellant with [possession with intent to deliver], the [criminal] information notified appellant of the Commonwealth's intent to seek the enhancement. Appellant's prior drug convictions appeared in the Quarter Sessions file and presentence report available to the sentencing court. . . . [T]he existence of these convictions was capable of objective proof; there was no need to resubmit them for the jury to determine they were recorded in appellant's file. Accordingly, appellant was properly sentenced under the enhancement. . . .

*Aponte,* 579 Pa. at 264, 855 A.2d at 811–812. Appellant argues that Section 9714 cannot survive our holding in *Aponte* because the determination of whether the predicate crimes arose from separate criminal transactions is not an objective fact ascertainable from review of the records of the prior judicial proceedings. It is here that we side with the Commonwealth's position that the ascertainment is one of a legal question related to a sentencing factor. Thus the final inquiry is removed from the ambit of the concerns raised by *Apprendi,* because it is not a factual finding that results in the sentence that exceeds the otherwise applicable statutory maximum.

The United States Supreme Court faced similar issues in two cases involving a federal habitual criminal penalty statute, the Armed Career Criminal Act, Title 18 U.S.C. § 924(e) (2000 ed. and Supp. II), also known as "ACCA." *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990); *Shepard, supra.* A burglary is a violent crime under ACCA only where it is a burglary of a building. Some states criminalize "generic" burglary, which relates only to buildings. However, other states have various grades of burglary, including, for example, burglary of a car or boat.

In *Taylor,* the United States Supreme Court held "that a court sentencing under the ACCA could look to statutory

elements, charging documents, and jury instructions to determine whether an earlier conviction after trial was for generic burglary," i.e. burglary of a building. *Shepard*, 544 U.S. at 15, 125 S.Ct. at 1257. The Supreme Court explained that a sentencing court could not look to the facts in the record itself to make the necessary determination about whether the burglary in question was of a building. Instead, the sentencing court could, generally, look only to "the fact of conviction and the statutory definition of the prior offense" to determine whether that prior conviction was "violent" for purposes of ACCA. *Taylor*, 495 U.S. at 601–02, 110 S.Ct. 2143, 109 L.Ed.2d 607.

*Shepard*, decided after *Apprendi*, addressed a question left open by *Taylor*—how to consider predicate offense convictions which are the results of guilty pleas, not jury trials. As a result, "there were of course no jury instructions" available to the later sentencing court. *Shepard*, 544 U.S. at 18, 125 S.Ct. at 1258. Thus, the prosecution wanted the sentencing court to consider other documents beyond those identified as acceptable in *Taylor*. *Id.* It was decided that a sentencing court could not "look to police reports or complaint applications to determine whether an earlier guilty plea necessarily admitted, and supported a conviction for, generic burglary." *Id.* Even though such evidence would have been of record, the Supreme Court held that such evidence could not be considered. *Id.*

Instead, *Shepard* held:

> that enquiry under the ACCA to determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information.

*Shepard*, 544 U.S. at 26, 125 S.Ct. at 1263.

We note that the United States Supreme Court has consistently intimated that the prior conviction exception to *Appren-*

*di* is not on unshakeable ground. *See Shepard,* 544 U.S. at 24, 125 S.Ct at 1262. Indeed, the *Shepard* Court recognized the "problem" that findings of the trial courts regarding the predicate crimes may not establish the facts necessary to implement a mandatory sentence for a later conviction, much like the argument raised by Appellant in the case at bar. *Id.*

> While the disputed fact here can be described as a fact about a prior conviction, it is too far removed from the conclusive significance of a prior judicial record, and too much like the findings subject to ... *Apprendi,* to say that ... a judge [is clearly authorized] to resolve the dispute.

*Id.* To preserve the constitutionality of ACCA, the *Shepard* Court limited the documents upon which the judge could make the necessary determination. While this portion of *Shepard* seems to indicate that only that which is "of record" may be used by the sentencing judge, and here there was nothing "of record" to indicate whether Appellant's prior convictions arose from separate criminal transactions, reading *Bradley* along-side the *Apprendi*-based decisions, Section 9714 can be construed so as to comport with the constitutional requirements.[13]

In *Bradley,* we granted allocatur to define the term "transaction" for purposes of Section 9714 in order to determine whether "two prior armed robbery convictions arose from separate criminal transactions such that appellant was properly sentenced under ... 42 Pa.C.S. § 9714(a)(2)." *Id.* at 144, 834 A.2d at 1128. Following a conviction for, *inter alia,* escape, Taboo Bradley was sentenced under Section 9714(a)(2). He had been convicted of two robberies in 1991, which occurred approximately one-half of an hour apart, and over three miles from one another. *Id.* at 145, 834 A.2d at

---

13. Pa.C.S.1922(3) ("In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used: (3) That the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth."); *See generally Searfoss v. School Dist. of Borough of White Haven,* 397 Pa. 604, 156 A.2d 841, 843 (1959) ("A statute should not be declared unconstitutional unless it violates the constitution clearly, palpably, plainly and in such manner as to leave no doubt or hesitation in the mind of the Court.").

1129.  The Commonwealth argued that Section 9714 should be applied.  Bradley argued "that he should not be sentenced under the 'three strikes' law because the 1991 robberies arose from a single criminal transaction."  *Id.* at 146, 834 A.2d at 1129.  Both sides introduced evidence from which the sentencing court concluded "that the 1991 robbery convictions constituted two predicate crimes of violence from separate criminal transactions," applied Section 9714, and ordered Bradley to serve a 25 to 50 year prison sentence.[14]  *Id.*

In order to establish jurisdiction, the *Bradley* Court explained that defining "transaction" was a matter of statutory construction, i.e. "a pure question of law," and that the appellant was not requesting review of the discretionary aspects of the sentences.  This was necessary because this Court generally does not engage in review of the discretionary aspects of sentences.  *See* 42 Pa.C.S. § 9781(f).  Thus, for purposes of application to resolution of the matter *sub judice,* the *Bradley* holding established that a determination of whether the events at issue constitute a separate criminal transaction for purposes of Section 9714 constituted a question of law, and that a sentence imposed pursuant to Section 9714 without the necessary proof that the prior crimes arose from separate criminal transactions is an illegal sentence.  *Bradley,* 575 Pa. at 149, 834 A.2d at 1131.  Having established jurisdiction, the *Bradley* Court then turned to the merits; based upon the *facts* established in the record, we reached the *legal* conclusion that the relationship between the prior convictions established, within the language provided by the General Assembly in Section 9714, that "two separate criminal transactions were involved."  *Id.*

In the matter *sub judice,* we find the Superior Court was incorrect to imply that *Bradley,* standing alone, provided a basis to dispose of the constitutional claim advanced by Appellant.  *Bradley* did not probe the nuanced constitutional ques-

14.  The Commonwealth "introduced certified copies of the criminal indictments charging appellant with the 1991 robberies.  In addition, the Commonwealth presented testimony concerning the circumstances of the prior offenses."  *Bradley,* 575 Pa. at 145, 834 A.2d at 1129.

tion of which decisions must be made by a jury. Instead, it merely fleshed out the definition of the terms provided by statute through application of the principles of statutory construction to what was a pure question of law. *Bradley*, 575 Pa. at 149, 834 A.2d at 1131 (2003).[15] However, the other basis for the Superior Court's decision—that the interrelatedness at issue here falls within the "fact of a prior conviction" exception to *Apprendi*—when read alongside *Bradley*, does provide a basis to affirm.

We agree with the Commonwealth that the finding of separateness required by Section 9714 is not too far afield from the conclusive significance of the facts about prior convictions, as illustrated in *Shepard*, to run afoul of the exception to *Apprendi*.[16] *Shepard*, 544 U.S. at 25, 125 S.Ct. at 1262–63. While Appellant has put forth a colorable argument that the logical and temporal relationship between the predicate crimes requires an analysis that is not resolved by consideration of facts proved in the prior prosecutions, that argument does not establish a constitutional violation because the analysis due, read in light of *Bradley*, is not fact-finding. The nature of the authorized sources identified in *Shepard* tells us that if the subject determination can be made by reliance upon objective facts that were proved as part of the underlying conviction, then those facts are imbued with the conclusive significance that permits a sentencing court to make its legal conclusions based upon them. In this way, we agree with the Common-

15. Stated otherwise, even if we were to side with the Appellant in this case, the core holding in *Bradley* would survive; we would simply require that juries employ the *Bradley* definition of what constitutes a "transaction" within the context of Section 9714.

16. The United States Supreme Court's 1998 decision in *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), established that fact of a prior conviction, i.e. the existence of the prior conviction, is not itself an element of a crime. Therefore, it need not be found by a jury. *Id.* at 239–48, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350. *Almendarez–Torres* is the wellspring for the exception to the rule announced in *Apprendi*. Sentencing factors, particularly those related to recidivism, are not to be treated, or proved, as elements of a crime; therefore, they need not be proved to a jury by the beyond a reasonable doubt burden of proof. *Id.* at 241, 118 S.Ct. at 1229. The exception announced in *Apprendi* is tied to the decision in *Almendarez–Torres*.

wealth that the "facts" needed to impose the Section 9714 enhanced penalties are available to a sentencing court through official court records. It is *those* facts that provide the basis for the sentencing court to decide whether to impose the enhanced penalties under Section 9714.

As we apply this analysis to the instant record, we note that the parties stipulated that court records would establish Appellant's predicate convictions. N.T. 4/26/05, 21–22. Thus, the dates of the predicate crimes, part of the record in those cases, were uncontested. Armed with that information, the sentencing court needed only to conduct the legal analysis and determine whether Appellant's predicate first-degree felony convictions arose from separate criminal transactions. Therefore, we perceive no due process violation obtaining from the proceedings below.[17] This determination comports with this Court's prior decisions addressing the process due under *Apprendi* and the United States Constitution. Appellant has failed to argue or establish a basis to conclude that the Pennsylvania Constitution requires anything more.

For the reasons set forth above, the order of the Superior Court is affirmed. Jurisdiction is relinquished.

Justice BAER and FITZGERALD join the opinion.

Justice CASTILLE files a concurring opinion.

Justice SAYLOR files a concurring opinion in which Chief Justice CAPPY joins.

Justice EAKIN files a concurring opinion.

17. We note that, during oral argument, the Commonwealth conceded to Appellant's position that if the convictions records did not provide a basis upon which a sentencing court could determine if the prior convictions arose from separate criminal transactions, a jury may need to be convened to adduce necessary facts. For the reasons explained above, however, this concession is of no consequence to the outcome of the matter *sub judice,* where the facts of the prior convictions (sufficient to determine if those convictions arose from separate criminal transactions) were made clear by court records.

Justice EAKIN, concurring.

I agree with Justice Castille's position on waiver of issues related to the non-retroactive *Apprendi* case, and decline to join footnote eleven. Otherwise, I join the majority.

Justice SAYLOR, concurring.

I join the majority opinion and its resolution of Appellant's facial constitutional challenge to Section 9714's third strike provision, except in the following respects.

First, I disassociate myself from footnote 11 of the majority opinion, in which a plurality of Justices characterizes the line of federal decisions arising under the Armed Career Criminal Act (the "ACCA") as unpersuasive. *See* Majority Opinion, *op.* at 244 n. 11, 942 A.2d at 181 n. 11. In my view, such decisions are analogous, highly instructive, and particularly persuasive—indeed, they apply a rationale that closely parallels that upon which the majority ultimately settles.[1] These decisions recognize that the salient question of "separateness" of criminal offenses for purposes of a recidivist sentencing statute may be fact-driven, but reason that the factual aspect of "separateness" is not different in kind from the types of

---

1. *See, e.g., United States v. Harris,* 447 F.3d 1300, 1304 (10th Cir.2006) ("The time, place, and substance of the prior convictions can ordinarily be ascertained from court records associated with the convictions, and the Supreme Court has held that the Constitution allows sentencing courts to rely on such records to make findings about prior convictions."); *United States v. Thompson,* 421 F.3d 278, 282 (4th Cir.2005) ("The Supreme Court has declined to attempt extraction of the mere fact of a prior conviction, stripped of all content."); *United States v. Santiago,* 268 F.3d 151 (2001) ("The determination of 'the fact of a prior conviction' implicitly entails many subsidiary findings[.]").

The plurality differentiates the federal cases based on the assertion that they implement a rigid "different dates" construction of the ACCA's "separate occasions" requirement. *See* Majority Opinion, *op.* at 244 n. 11, 942 A.2d at 181 n. 11. By my reading, however, this line of decisions does not hinge exclusively on the date of a criminal offense, but rather, applies an evaluative separateness rationale very similar to what is required under Pennsylvania's three-strikes provision. *See, e.g., United States v. White,* 465 F.3d 250, 253 (5th Cir.2006) (describing the relevant inquiry under the ACCA as subsuming a requirement that the convictions must arise from "separate criminal transactions" and summarizing various cases in which offenses were found to have occurred on "separate occasions," despite their commission on the same day).

factual matters already left to the sentencing judge under the *Apprendi* line of decisions. *See Santiago,* 268 F.3d at 156. Thus, I am able to agree with both the federal courts and the majority that, in the ordinary case, separateness may be established before a judge in a sentencing proceeding through the use of *Shepard*-approved sources. *Accord Thompson,* 421 F.3d at 282–83 (citing *Shepard v. United States,* 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005)).[2]

Second, I have a modest difference with the majority to the degree that its opinion can be read as addressing Appellant's claim as an as-applied constitutional challenge to the procedure employed by the sentencing court, or as a challenge to the merits of the sentencing court's actual determination of separateness. *See, e.g.,* Majority Opinion, *op.* at 252, n. 17, 942 A.2d at 186, n. 17 (indicating that the "facts of the prior convictions (sufficient to determine if those convictions arose from separate criminal transactions) were made clear by court records"). In this regard, I have not consulted the original record in light of the facial nature of the actual constitutional challenge accepted for review and presented. Thus, I would only note that the litigants and the sentencing and reviewing courts in their opinions did not focus on a particularized assessment of subsidiary facts associated with the prior convictions, nor did they develop dates and particular locations with regard to the two relevant Philadelphia-based offenses.[3] That said, to the degree that the majority is commenting the propriety of the actual sentence in terms of the separateness inquiry, I do not dispute that, facially, its determination appears to be well founded.

Chief Justice CAPPY joins this concurring opinion.

2. I would also note that this Court's holding in *Commonwealth v. Shiffler,* 583 Pa. 478, 879 A.2d 185 (2005), that Section 9714 requires sequential convictions, when viewed in juxtaposition with the statutory compulsory joinder rule, *see* 18 Pa.C.S. § 110, provides a degree of additional assurance that the individual strikes under Section 9714 are for crimes that are sequential in nature.

3. What is known from the briefs and the judicial opinions is that the *arrests* for these offenses were on separate occasions.

Justice CASTILLE, concurring.

I join the Majority Opinion, with the exception of the points I set forth below.

Citing a non-binding Superior Court decision, the Majority states that *Apprendi*[1] claims raise questions implicating the "legality" of a sentence, rather than the discretionary aspects of the sentence. Majority Op. at 234, 942 A.2d at 175. I certainly agree that a valid *Apprendi* claim does not implicate discretionary sentencing. Moreover, there is precedent from this Court which supports the Majority's broad statement. *See Commonwealth v. Roney,* 581 Pa. 587, 866 A.2d 351, 359 n. 32 (2005), *cert. denied,* 546 U.S. 860, 126 S.Ct. 139, 163 L.Ed.2d 141 (2005). However, in my Concurring Opinion in *Roney,* I noted my disagreement with the notion that a new constitutional sentencing rule from the U.S. Supreme Court, which the High Court says is not to apply retroactively, should operate to make a waived *Apprendi*-type claim non-waivable. I continue to believe that the *Roney* footnote obviously was wrong. *Apprendi* claims are not claims implicating the "legality" of a sentence, at least for purposes of waiver. *See id.,* at 362–63 (Castille, J., concurring).

On a related note, I respectfully disagree with the Majority's characterization of *Commonwealth v. Bradley,* 575 Pa. 141, 834 A.2d 1127 (2003), as holding that "a sentence imposed pursuant to 42 Pa.C.S. § 9714 without the necessary proof that the prior crimes arose on separate criminal transactions is an illegal sentence." Majority Op. at 250, 942 A.2d at 185. This author's analysis in *Bradley* was more nuanced. As I explained in that decision:

Moreover, if appellant's claim proved to have merit, it would implicate the legality of his sentence. "An illegal sentence is one that exceeds the statutory limits." *Commonwealth v. Hunter,* 768 A.2d 1136, 1144 n. 3 (Pa.Super.2001), *quoting*

1. *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

*Commonwealth v. Archer*, 722 A.2d 203, 209 (Pa.Super.1998) (*en banc*). Appellant was convicted of aggravated assault upon Officer Reigle under 18 Pa.C.S. § 2702(a)(2), which is classified as a felony of the first degree. *Id.* § 2702(b). The Crimes Code permits a sentence of no more than twenty years of imprisonment for a first-degree felony. See 18 Pa.C.S. § 1103(1). Thus, **the 25 to 50 year sentence imposed by the trial court for this offense would exceed the statutory limit** and be illegal **unless** the "three strikes" provision of Section 9714 applies. Under these circumstances, we conclude that appellant's claim implicates the legality of his sentence. Accordingly, he may raise the question as a matter of right and our jurisdiction over the claim is correspondingly secure. *See* 42 Pa.C.S. § 9781(a) ("The defendant or the Commonwealth may appeal as of right the legality of the sentence.").

*Id.* at 1131 (emphasis added). The analysis in *Bradley* only focused on whether there was "necessary proof" of separate criminal transactions after first considering whether the sentence exceeded the statutory limit in the first instance. If so, then proper application of Section 9714 would be required to save an otherwise illegal sentence from illegality.

Finally, I do not join footnote 11 of the Majority Opinion as I find its discussion unnecessary.

With the exception of the above points, I join the Majority Opinion.