J-S13042-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| TRENTON ROSS BILAK, | : | |
| | : | |
| Appellant | : | No. 1456 WDA 2018 |

Appeal from the Judgment of Sentence Entered September 11, 2018
in the Court of Common Pleas of Blair County
Criminal Division at No(s): CP-07-CR-0001191-2017

BEFORE:   BENDER, P.J.E., OTT, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:                    FILED MAY 21, 2019

Trenton Ross Bilak (Appellant) appeals from the September 11, 2018 judgment of sentence of an aggregate term of eight and one-half to seventeen years of incarceration, to be followed by two years of probation, imposed after he pleaded guilty to accidents involving death or personal injury, homicide by vehicle, tampering with or fabricating physical evidence, and reckless driving.  We affirm.

We glean the following facts from the record.[1]  Appellant's convictions stem from an incident that occurred in Greenfield Township, Pennsylvania on

_____

[1] The convictions in the instant appeal resulted from Appellant's guilty plea. The facts are derived from the transcripts of the preliminary and sentencing hearings, as well as Appellant's pre-sentence memorandum.

* Retired Senior Judge assigned to the Superior Court.

April 14, 2017, at about 4:00 a.m. Appellant, while operating an all-terrain vehicle (ATV), caused the death of 18 year-old Mikayla Focht. On the night of April 13, 2017, Appellant and a group of about 15-20 others, nearly all teenagers, gathered on a wooded property for a bonfire party, which had been arranged by Jacob Helsel. Alcohol was served and Appellant, who was 21 years old at the time, was drinking beer. The property had a cabin within one-half mile of the bonfire. At some point in the early morning hours of April 14, about 10 of the attendees moved from the bonfire to the cabin, where many planned to spend the night. Several people observed Helsel inappropriately touching Focht inside the cabin; they tried to separate Helsel from her. One person left the cabin and went to the bonfire, where Appellant heard what was happening at the cabin. Appellant, who had arrived at the party on his ATV, drove it to the cabin. When he arrived, he ordered everyone out of the cabin. Appellant and Helsel talked alone for several minutes. Appellant said he was going to take Focht home, but when an attendee objected, Appellant threatened to pull a gun on anyone who had a problem with his taking Focht home. Appellant, Focht, and Helsel then left the property.

Appellant drove his ATV with Focht on the back, while Helsel followed behind driving his Jeep, eventually making their way to Knob Road. Knob Road is a local highway with a speed limit of 45 miles per hour and ATVs are not permitted to operate on it. Appellant was traveling at an excessive speed of at least 56 to 62 miles per hour. Shortly after 4:00 a.m., Appellant

- 2 -

struck two deer with his ATV, catapulting Focht more than 200 feet off of the vehicle and onto the roadway.[2] Focht died instantly; Appellant was not seriously injured. Helsel, who was following behind in his Jeep, swerved to avoid hitting Appellant or Focht in the roadway, lost control, and ran over Focht's body with his Jeep before crashing it into a pole. Appellant and Helsel did not know whether Focht was still alive, did not render or call for aid, and left the scene driving their respective vehicles.

At least two witnesses heard the crash from their homes, but they believed someone had struck a deer, which was common on that stretch of road. When they saw vehicles leaving the scene, they returned to bed. Over two hours later, at about 6:10 a.m., a witness who was driving to work came upon Focht's body in the roadway. She immediately called 911 from a neighboring house, and then returned to the roadway to position her vehicle in such a way that it would protect Focht's body from oncoming traffic. Shortly after, Appellant and Helsel drove past the scene in Appellant's red truck, but only after the witness flagged the truck down did Appellant stop. At some point, someone at the scene, presumably Appellant or Helsel, retrieved vehicle parts from where the Jeep had crashed into the pole earlier

_____

[2] Appellant did not take any evasive action, even though the moon was nearly full that night. N.T., 2/1/2018, at 89-90. An expert opined at the preliminary hearing that the deer should have been visible to Appellant, and Appellant should have been able to react by braking, counter-steering, or taking some other kind of evasive action. Id. 89-90, 100.

that morning, and put them in the back of Appellant's truck. While at the scene, Appellant did not offer any information to emergency responders or others about his involvement in the accident.

During the approximately two hours between the accident and 911 call, Appellant and Helsel made several stops. First, they went to a friend's house located nearby. The friend and another individual who was at the home told Appellant and Helsel to call 911, but they never did. Appellant hid his ATV behind an out-building on the friend's property. At some point, Appellant changed his clothes and got his red truck. Next, he drove to property owned by Helsel's relatives, where Helsel had driven and concealed from view his Jeep. At the time of the accident, Appellant had pending driving while intoxicated (DUI) charges and had been released on bail.

After a police investigation, Appellant was charged with numerous offenses, and after a preliminary hearing on June 8, 2017, all charges were held over to court. Appellant filed an omnibus pretrial motion on October 25, 2017, which largely related to Appellant's blood alcohol content test results. At a pretrial hearing on February 1, 2018, the Commonwealth moved to withdraw three charges relating to DUI offenses, which the trial court granted.

On June 15, 2018, Appellant entered into an open guilty plea to the aforementioned charges. Appellant was sentenced, inter alia, to five to ten years of incarceration on the accidents involving death or personal injury count, three and one-half to seven years of incarceration on the homicide by

vehicle count, and two years of probation on the tampering with or fabricating physical evidence count, with all sentences to run consecutively, and a $200 fine on the reckless driving count. Appellant timely filed a post-sentence motion, which the trial court denied on September 24, 2018. This timely-filed appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant challenges the discretionary aspects of his sentence. Specifically, Appellant argues that the court erred in sentencing Appellant to the statutory maximum for his accidents involving death or personal injury and homicide by vehicle convictions without providing sufficient reasons for sentencing him outside the standard guideline range on each count. Appellant's Brief at 10. We consider this issue mindful of the following.

> An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:
>
>> (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

Commonwealth v. Samuel, 102 A.3d 1001, 1006-07 (Pa. Super. 2014) (some citations omitted).

Here, Appellant timely filed a notice of appeal, sought reconsideration of his sentence in a post-sentence motion, and his brief contains a Pa.R.A.P. 2119(f) statement. We now consider whether Appellant has presented a substantial question for our review.

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. Commonwealth v. Paul, 925 A.2d 825, 828 (Pa. Super. 2007). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the sentencing code; or (2) contrary to the fundamental norms which underlie the sentencing process." Commonwealth v. Griffin, 65 A.3d 932, 935 (Pa. Super. 2013) (citation and quotation marks omitted).

Instantly, Appellant asserts in his 2119(f) statement that the court improperly considered the elements of the offenses to which Appellant pleaded guilty as aggravating factors to justify its imposing the statutory maximum sentences for the aforementioned convictions. Appellant's Brief at 16-18. We conclude that Appellant has raised a substantial question. See Commonwealth v. Fullin, 892 A.2d 843, 848 (Pa. Super. 2006) (concluding Fullin raised a substantial question where he argued "that the

- 6 -

trial court improperly based his aggravated range sentence on a factor that constituted an element of the offense").

We address the merits of this claim mindful of the following.

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

* * *

When imposing [a] sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.

Commonwealth v. Antidormi, 84 A.3d 736, 760-61 (Pa. Super. 2014) (internal citations and quotation marks omitted). Subsection 9721(b) of the Sentencing Code offers the following guidance to the trial court's sentencing determination:

[T]he sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S. § 9721(b).

As a general matter, Pennsylvania's sentencing scheme, with its guidelines and suggested minimum sentences, is "indeterminate, advisory, and guided" in its nature. Pennsylvania judges retain broad discretion to sentence up to and including the maximum sentence authorized by statute; "the only line that a sentence may not cross is the statutory maximum sentence."

Commonwealth v. Gordon, 942 A.2d 174, 182 (Pa. 2007) (citations omitted). "A judge's statement of the reasons for imposing a particular sentence must clearly show that he has given individualized consideration to the character of the defendant." Commonwealth v. Conte, 198 A.3d 1169, 1176 (Pa. Super. 2018) (citation and internal quotation marks omitted). "Where the sentencing judge had the benefit of a pre-sentence report, it will be presumed that he was aware of relevant information regarding appellant's character and weighed those considerations along with the mitigating statutory factors." Id. at 1177.

> The sentencing court is in a superior position to review the defendant's character, defiance or indifference, and the overall effect and nature of the crime. Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed.
>
> Under the Sentencing Code[,] an appellate court is to exercise its judgment in reviewing a sentence outside the sentencing guidelines to assess whether the sentencing court imposed a sentence that is "unreasonable." 42 Pa.C.S.[] § 9781(c)(3). There are no concrete rules as to the unreasonableness review for a sentence that falls outside of the guidelines.

Id. "[O]ur Supreme Court has indicated that if the sentencing court proffers reasons indicating that its decision to depart from the guidelines is not unreasonable, we must affirm a sentence that falls outside those guidelines."

Commonwealth v. Bowen, 55 A.3d 1254, 1264 (Pa. Super. 2012) (citation, quotation marks, and emphasis omitted).

At the sentencing hearing, the Commonwealth presented the testimony of seven witnesses, including Focht's mother, each of whom explained how Focht's death has impacted him or her; photographs from the scene of the accident, which were admitted under seal; and a slideshow of Focht's senior year of high school pictures. The court also heard testimony from Appellant. The Commonwealth, referring to Appellant's egregious conduct, sought the imposition of consecutive statutory maximum sentences, while Appellant requested leniency.

In its opinion, the trial court stated that it considered the victim impact statements, "the reasons set forth on-the-record by the Commonwealth during the sentencing hearing," "the Commonwealth's arguments in support of imposition of the statutory maximum sentences, to be run consecutive[ly]", and that "even though [] Appellant entered a guilty plea, he did not accept full responsibility for his actions." Trial Court Opinion, 11/7/2018, at 7-15. The trial court explained its sentencing rationale as follows.

> Based upon our knowledge of the underlying circumstances of this case, including presiding over the pretrial hearing held February 1, 2018, we accept the Commonwealth's version of the underlying circumstances as being truthful, credible[,] and supported by the evidence. In doing so, we accepted the Commonwealth's argument that the actions of [] Appellant on the night in question were egregious, callous, calculated, deliberate[,] and remorseless. This was not your

typical hit-and-run case…. The actions, or lack of action, by [] Appellant in failing to render aid to [] Focht and in attempting to cover his tracks, distinguishes this case from your "normal" case and justifies a deviation from the sentencing guidelines.

Before imposing our sentence upon [Appellant], we set forth in detail our factors for sentencing as follows:

BY THE COURT: … I want to place this all on the record. These are the court's factors for sentencing. We have considered all relevant factors for sentencing, including, but not limited to, the protection of the community, the gravity of the offenses in relation to the impact on the victim and community and the rehabilitative needs of [Appellant]. We have also considered the underlying factual circumstances, the information set forth in the pre-sentence investigation report, the sentencing guidelines, the pre-sentence memorand[a] that have been submitted by the Commonwealth and [Appellant] and the presentations [made today] on behalf of the Commonwealth and [Appellant, and Appellant's] actions on the night in question resulting in [the] death of [] Focht. What is especially troubling to us is that after the accident, both [Appellant] and [] Helsel fled the scene and allowed [] Focht to lay [sic] on the roadway for approximately two hours until another passing motorist [] called 911, protected her body[,] and reported the incident. At no time did [Appellant] or [] Helsel take any steps to protect [] Focht's body or call 911 or make any effort to render aid or contact emergency personnel to render aid. Instead, [Appellant and Helsel] went to a private residence to conceal the whereabouts of the ATV and traveled to another location to conceal the whereabouts of the Jeep and then returned to the scene of the accident, at which time they made an attempt to tamper with evidence and, in fact, did tamper with evidence.

Relative to the pre-sentence investigation report, we note that [Appellant] is 24 years of age, a high school graduate and has prior convictions for disorderly conduct and criminal mischief from

January 31[,] 2013. He received ARD for purchase of alcohol by a minor in July of 2013 and a prior guilty plea for DUI, highest rate of alcohol, first offense on January 31[,] 2017. [Appellant], in the pre-sentence investigation, acknowledged a drinking problem[ and] has never sought any formal treatment to address his alcohol issue. Until his incarceration, he did maintain steady employment with Rockland Manufacturing in Bedford. We do believe that [Appellant's] rehabilitative needs will be addressed by a drug and alcohol evaluation and following through with any recommended treatment, as well as successful completion of a cognitive behavioral therapy class, as well as community service.

We have considered that [Appellant] has [pleaded] guilty to certain counts of the criminal information. [Appellant] indicates that he has [pleaded] guilty to accept responsibility for his actions and to save the family and friends of [] Focht from proceeding through a trial. Even though[] we acknowledge that [Appellant] has entered a guilty plea, it does not negate the facts that [Appellant] engaged in a series of poor decisions and criminal behavior that directly resulted in the death of [] Focht. [Appellant] made poor decisions in attending this underage drinking party[, ] drinking alcohol to the extent that he did, [] leav[ing] the scene with [] Focht as a passenger on his ATV[,] and [] operat[ing] his ATV in violation of the Vehicle Code and in a reckless and/or grossly negligent manner which directly resulted in [] Focht's death. Again, after such accident, both [Appellant] and [] Helsel left the scene without making any effort to aid [] Focht or call emergency personnel.

We find no credibility in [Appellant's] assertion that he was attempting to save [] Focht or trying to get [] Helsel back to the scene of the accident or that he somehow was acting in a heroic manner on the date in question. We believe that such assertions are simply not credible and not supported by the evidence. Clearly, if [Appellant and Helsel]

- 11 -

were without cell phone service where the accident occurred, the right thing to do was for one of them to stay with [] Focht and the other to travel to a location where there was such cell phone service. There was nothing heroic about [Appellant's] actions on the night in question, and in fact, we find his actions were selfish, calculating[,] and inhumane.

As a result, we agree with the Commonwealth that the highly egregious and calculating conduct of [Appellant] exceeds that harm contemplated by the statute. Thus, we believe that the statutory maximum sentence for both accidents involving death or personal injury and homicide by vehicle is appropriate. We also believe that consecutive sentences are appropriate.

Id. at 15-17 (quoting N.T., 9/11/2018, at 63-66) (some quotation marks omitted, capitalization altered, and paragraph breaks supplied).

According to Appellant, the trial court based his statutory maximum sentences on the fact that "1) Appellant and [Helsel] left the scene and allowed the victim to lay [sic] on the road for almost two hours; that 2) Appellant and [Helsel] went to another location to conceal evidence; and 3) then only returned to the scene to tamper with evidence[; and] that 4) Appellant operated his ATV in a reckless manner which resulted in the death of the victim," and thus based the sentences on essential elements of the crimes. Appellant's Brief at 22, 25-26 (citations to reproduced record omitted). Appellant argues that leaving the scene is an element of the

offense of accidents involving death or personal injury;[3] tampering with evidence is an offense to which he pleaded guilty and was sentenced separately; and operating his ATV in a reckless manner is an element of the offense of homicide by vehicle.[4] Id. at 23, 26-27.

Upon review, we find that Appellant has not shown any error on the part of the trial court in fashioning his sentence. The trial court deviated from the sentencing guidelines after it stated that it was "especially

_____

[3] The crime of accidents involving death or personal injury is defined as follows.

> (a) General rule.--The driver of any vehicle involved in an accident resulting in injury or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of section 3744 (relating to duty to give information and render aid). Every stop shall be made without obstructing traffic more than is necessary.

75 Pa.C.S. § 3742(a).

[4] The crime of homicide by vehicle is defined as follows.

> (a) Offense.--Any person who recklessly or with gross negligence causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic except section 3802 (relating to driving under influence of alcohol or controlled substance) is guilty of homicide by vehicle, a felony of the third degree, when the violation is the cause of death.

75 Pa.C.S. § 3732(a).

troubl[ed]" by the fact that Appellant left Focht's body unprotected from oncoming traffic on a state highway for over two hours, and found Appellant's conduct was not that of a "typical hit-and-run case," but was "highly egregious," "selfish, calculating and inhumane;" the trial court stated that it also considered Appellant's failure to aid Focht in any manner, his attempt to "cover his tracks," his admission to having a drinking problem, his need for drug, alcohol, and behavioral evaluation and treatment, his age, his prior convictions, his employment history, his guilty plea, and his proffered explanation for why he acted the way he did on the night in question. Trial Court Opinion, 11/7/2018, at 15-16; N.T., 9/11/2018, at 63-66; see also Fullin, 892 A.2d at 849 (finding the "trial court's use of the words 'seriously, seriously abrogated' indicate that it was imposing a sentence based on the fact that Fullin had not merely violated a duty of care, but that Fullin's behavior was a particularly egregious violation of that duty"). Moreover, Appellant offers no argument that the circumstances of this case are in any way typical of cases falling within the definition of the offenses of accidents involving death or personal injury and homicide by vehicle.

We find that the factors which led to the court's imposing statutory maximum sentences were legal considerations and the trial court's reasons were aptly stated on the record. See Conte, supra. The trial court properly considered the nature and circumstances of the offenses to which

Appellant pleaded guilty, recognized the background that led to Appellant's criminal conduct, and took into account the history and characteristics of Appellant, specifically noting that it did not find Appellant to be credible, that Appellant did not accept full responsibility for his behavior, and that Appellant had been released on bail for a separate DUI offense when the accident occurred. See id. In addition, the trial court gave due consideration to the information contained in the pre-sentence investigation report, the sentencing guidelines, the pre-sentence memoranda submitted by the parties, and the testimony of the witnesses and exhibits presented at the sentencing hearing. See id.; see also N.T., 9/11/2018, at 64. Because the trial court fashioned an individualized, reasonable sentence after taking into account multiple factors, we discern no abuse of discretion. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/21/2019

- 15 -